Hillsborough,
Oct. 7, 1930.

JOSEPH L. MOREAU

*v.*

THE PALATINE INSURANCE COMPANY OF LONDON, ENGLAND.

*Thomas J. Leonard* and *Doyle & Doyle* (*Mr. Leonard* orally), for the plaintiff.

*Thorp & Branch* (*Mr. Branch* orally), for the defendant.

ALLEN, J. I. The issue of attempted fraud has chiefly to do with representations of the plaintiff after the loss about the personal property. From the evidence a value of $250 for the contents of the house was reasonably findable. The defendant's agent's testimony about their value when the insurance was placed and the evidence about the tools are sufficient to prove such value.

But the issue is not thereby disposed of. If the plaintiff did not think the property had that value, or was doubtful about it, or thought the defendant would question it, and practiced deception by purposely overstating the value, it was an attempt to defraud within the meaning of the policy. Dishonesty to induce the defendant or the jury to believe that the property was worth at least the amount of insurance on it was an undertaking of fraud, even if the property in fact had such value. The policy was intended to forbid dishonesty in any connection with it and regardless of its success or of its necessity to establish the claim. *Follett* v. *Insurance Co.*, 77 N. H. 457; *Saidel* v. *Assurance Soc'y, ante,* 232. It is no answer to proof of dishonesty to say that it is not material because the property was worth all it was insured for. Fraud in proving value is not permitted even if it turns out to be harmless. By its terms the policy becomes void if the insured undertakes to practice fraud, and dishonest statements relative to value constitute such an undertaking. Whatever falsehood "would manifestly be likely to influence the defendant's subsequent conduct with reference to paying the loss" (*Follett* v. *Insurance Co., supra,* 460), as well as to affect the outcome of the trial (*Ib.,* 459), is fraud within the ban of the policy.

After the fire it was for the plaintiff to establish in honest ways the amount of his loss, either to the defendant's acceptance or to the jury's satisfaction. If instead he acted dishonestly, his effort to de-

ceive was a fraudulent undertaking. In the situation after the fire the value of the property was in issue, and if it conclusively appears that he made false statements in the proof of claim, his deposition, or his testimony at the trial relative to such value, his attempt at fraud follows.

The issues of attempted fraud and of value are distinct although the same evidence and testimony relate to both. If fraud is established, it is not to be said that an honest value may be allowed. Concededly there was some property and it had some value, but recovery is not to be given for it if by fraud it was undertaken to show a greater value.

The important charge of dishonesty on the plaintiff's part in respect to the personal property relates to his claim of furniture bought and installed in the house about two weeks before the fire. When his deposition was taken, he was asked where he bought the furniture. After objecting to the question he testified that it was bought in Boston and was brought by the dealer's truck from there and delivered at his place. At the trial he testified that an itinerant truckman, saying he was from Boston, came along with a load of furniture, stopped at the house, sought to do business with him, and sold him articles which came to about $225 and for which he paid cash. In his deposition he testified that he had a receipt for what he bought. At the trial he said he had lost it and could not find it when the proof of loss was made out many months before the deposition was taken. The conflict between his testimony in his deposition and that at the trial is conclusive to prove his dishonesty.

The suggestion that his testimony in the deposition that the furniture was bought in Boston is not the same as saying that he bought it there, is not well made. The testimony was in response to the inquiry where he bought it, and the only fair meaning of his answer is that he bought it in Boston. Possessing ordinary intelligence, he must have known that he gave the questioner to understand that the furniture was bought in Boston by him. It is not only captious to say otherwise, but to urge the suggestion is to acknowledge that he was undertaking to mislead the questioner by putting his answer in such form that it would be misunderstood. Evasion intended to mislead is as much false testimony as direct falsehood. Moreover his testimony in the deposition that the furniture was brought from Boston to his place by the dealer's truck was given in furtherance of the testimony that it was bought there, as though by him.

Whether his testimony at the trial about the transaction may be

believed, is doubtful. Litchfield, where his place was situated, is a small town, having in 1920 a population of about 200. The main road through the town, on which the place is located, runs along the east side of the Merrimack river and is not a through highway with much travel on it. According to his testimony, a truckman whose name was forgotten went over that road on his way from Boston late in February with a load of furniture for sale, without prearrangement stopped at the plaintiff's house where the plaintiff was not living but happened to be at the time, doing some odd jobs, and after bargaining sold the plaintiff black walnut furniture, velvet carpets and other household articles, for a cash price of $225, which the plaintiff happened to have with him at the time, all this taking place before the plaintiff was ready to buy furniture, the house being recently made over.

If this statement can be given reasonable belief, such belief is strained and taxed to the utmost. A claim of events so contrary to experience may be beyond fair acceptance of its truth, as well as a claim of what is contrary to nature. Testimony of what may be possible may fall short of being entitled to credence as probable. There are limits to a fair and honest belief of testimony of a strange and unusual transaction or event, and the fact of its possible truth may not be enough to give it acceptance to the ordinary man. When in addition the testimony is shown to be inconsistent with that of the deposition in important points, the difficulty of reasonable acceptance of the testimony becomes greater.

Without reaching any final conclusion whether it might be adopted, it remains that if it might be found in most respects true, then the testimony of the deposition was false both as to the furniture being bought in Boston and as to the plaintiff having a receipt for it. The only conceivable purpose of the false statements was to support the representations about the purchase and installation of more furniture than was in the house when the insurance was placed, and the only conclusion is that the deception was attempted for the purpose of giving belief that there was more furniture than there was. No other reason for making the false statements can be found. And the falsehood was manifestly intended to influence either the defendant to pay the loss as claimed or the jury to award it.

If the testimony of the deposition as to the source of the furniture thus claimed to have been bought is true, then that at the trial is false and shows a like purpose to mislead and deceive.

Since the plaintiff by his falsehoods intended that the defendant

or the jury should believe that he had more furniture than he knew there was, it follows that in no event can it be believed that any furniture to a substantial amount was bought. If there had been, there would have been no occasion to swear falsely concerning the general transaction of purchase, and both the deposition and the testimony at the trial, as well as the proof of loss, must be found false in the assertion of such amount.

The argument that the plaintiff is a character who is perhaps unable to give the same version of the details of a transaction twice and so might be found honest, ignores the record upon which the conclusiveness of the issue of dishonesty must here be passed. It is to be assumed that he has ordinary intelligence and understands the difference between truth and falsehood. It is not to be doubted that he appreciated the purport and bearing of the questions asked him. They were not ambiguous and with or without reference to the context could not be misunderstood. To say that he might reasonably be found honest in his testimony would exhibit an indifference to the record that would permit a clear case of dishonesty to be toned down into honest mistake. On a fair reading of the record no such result of an honest mistake can be reached. While allowance for misunderstanding may be given, irresponsibility for testimony may not be granted. Perjury is not thus to be whitewashed.

Whether no furniture at all was bought or whether some was bought the amount and value of which was misrepresented, is not important. Fraudulent testimony about it being given for the purpose of inducing reliance upon an honest character to the claim and its consequent acceptance, the defendant has no burden to show the specific dishonesty. It is enough that dishonest statements to induce a belief in a greater value than the property had are shown to have been made. And it follows that the testimony of a brother of the plaintiff to the effect that he noticed some new furnishings of no great amount in the house does not affect the conclusion of attempted fraud.

II. The position is taken that the policy is divisible between the groupings of the property insured, and that fraud in connection with one does not affect the others. In support of the position it is said that the policy is to be treated as though it were made up of as many separate policies as there are groups of the property insured, and that fraud in overvaluing the personal property is therefore immaterial in any effect on the insurance of the real estate.

The issue is one of construction of the policy. In its wording no intimation of such a divisional theory is suggested. As it reads, it

is made subject to its stated stipulations and conditions and "This policy shall be void" in the event of many specified contingencies of which "any attempt to defraud" is one. There is no semblance of an indication of a combination of a number of policies, at least in respect to fraud. It is true that the language used is that of the insurer. Yet the insured on reading it would more naturally understand that fraud vitiated the entire policy and not alone the part of it to which the fraud directly related.

No injustice in such a construction is perceived. The difference between fraud and unintentional wrongdoing in breaches of duty is recognized by all in their mutual dealings as well as in the law, and the consequences of intentional wrongs are generally regarded as broader in scope and effect than for other wrongs. It is not a penalty to hold a fraudulent wrongdoer to a construction of the terms of his contracts relating to the fraud which does not operate in his favor. Liberality of construction adopted to relieve him from all the consequences of his fraud is not a demand of fairness, and a construction giving breadth to the consequences is not a hardship. It is generally regarded that fraud in a transaction is systemic and more than local. And the importance to the insurer of protection against fraud is paramount.

The case of *Baldwin* v. *Insurance Co.*, 60 N. H. 422, goes farther than is here necessary in support of the indivisibility of a fire insurance policy. It is not a case of fraud. The case holds that alienation of part of the buildings insured without the insurer's consent terminates all liability on the policy, under a clause avoiding it for "any change" taking place in the title without such consent. Among the reasons given for the conclusion reached is that of the ordinary and popular sense of the language used in the absence of any showing which gives it by usage a different signification. The reason applies with equal force here.

As to other authority, whatever the rule when the breach of condition is not fraud, there appears to be but little dissent from holding the entire policy void when the breach is fraud. *Schuster* v. *Insurance Co.*, 102 N. Y. 260; *Moore* v. *Insurance Co.*, 28 Grat. 508; *German Insurance Co.* v. *Reed*, 13 Ky. L. R. 207; *Cashman* v. *Insurance Co.*, 10 N. B. 246; *Worachek* v. *Insurance Co.*, 102 Wis. 88; *Mitchell* v. *Insurance Co.*, 72 Miss. 53; *Fowler* v. *Insurance Co.*, 35 Ore. 559; *Oshkosh &c. Company* v. *Insurance Co.*, 31 Fed. Rep. 200; *Arkansas Ins. Co.* v. *Cox*, 21 Okla. 873; *Insurance Company* v. *Connelly*, 104

428

Tenn. 93; *Harris* v. *Insurance Co.*, 10 Ont. Rep. 718; *Hall* v. *Association*, 106 Mo. App. 476; *McGowan* v. *Insurance Co.*, 54 Vt. 211.

In *Sullivan* v. *Insurance Co.*, 89 Tex. 665, it was held that fraud as to personalty does not avoid the policy as to realty when the policy is valued by statute as to the realty. The case is not to be followed here. It is not apparent how there can be any logical difference between a valued and an open policy in the effect of its provisions for forfeiture by reason of fraud. The inquiry is not whether the value of the realty is or is not contestable, but whether by the terms of the policy the insured's fraud ends all of his rights under it. The statute here in force (P. L., c. 276, s. 8) is concerned only with value, and not with other defences.

*Judgment for the defendant.*

BRANCH, J., did not sit: the others concurred.