ARTHUR J. LACOURSE *v.* FIREMAN'S FUND INSURANCE COMPANY.

*Alvin A. Lucier* and *Roger G. Chagnon* (*Mr. Lucier* orally), for the plaintiff.

*Thorp & Branch* (*Mr. Branch* orally), for the defendant.

WOODBURY, J. The defendant advances three reasons why its motions ought to have been granted. It contends that the evidence conclusively establishes that the plaintiff either set or procured the setting of the fire which destroyed his property, that he attempted to defraud the defendant after the loss by giving false testimony at the trial, and that, since the issuance of the policies and without the defendant's assent, he changed his use of the Shadow Villa property in such a way as to increase the risk of loss assumed by the defendant.

There is no direct evidence that the plaintiff either set the fire himself or that he procured someone else to set it for him. It does not even appear what caused the fire. All that appears is that at the time of the fire the plaintiff was, and for several hours before had been, in the immediate vicinity of the buildings which were burned, that upon one occasion during that time he and his brother had entered the camp in which the fire started, that the plaintiff, although he repeatedly said he did not know how the fire started, once in the course of his testimony said that in his opinion "It must have been [started by] somebody," and that at the time of the fire there was a judgment outstanding against him in an action for

breach of promise of marriage. There is no evidence of over insurance, there is no evidence of suspicious or extraordinary behavior on the plaintiff's part immediately before, during or after the fire, and there is not even any evidence that the fire was of incendiary origin. These facts clearly distinguish the case at bar from *Lamb* v. *Insurance Co.*, 88 N. H. 308 upon which the defendant relies.

The most that can be said for the defendant's position is that the plaintiff had an opportunity to set the fire, that he may have had some motive for wanting to collect on his fire insurance policies because of the judgment against him and that no cause for the fire can be assigned. It requires no extended argument to show that this evidence falls far short of establishing as a matter of law that the defendant set the fire which destroyed his own property. There is certainly no rule of law to the effect that a fire of unknown origin which destroys insured property owned by a judgment debtor is conclusively presumed to have been set by the owner when it appears that it was physically possible for him to have done so. It suffices to say that the defendant in the case at bar does not make out as strong a case as did the defendants in the cases of *Wood* v. *Insurance Co.*, 89 N. H. 524, and *Hall* v. *Insurance Co.*, *ante* 191, in both of which we held that it was for the jury to say whether or not the plaintiff set or procured the setting of the fire which burned his buildings.

The defendant's contention that the plaintiff attempted to defraud it after the loss is based upon the plaintiff's testimony at the trial in relation to his activities in the illegal sale of intoxicating liquor. During his cross-examination by counsel for the defendant he first equivocally denied that he was an "old time bootlegger" and then denied that he had sold liquor illegally "in" Shadow Villa during the fall preceding the fire. However, when confronted with previous statements made by him under oath at a hearing before the Insurance Commissioner, he admitted that he had sold liquor "from" Shadow Villa during that fall up to the time of his conviction therefor on October 26, 1936. He described his activities as follows: "People would come in and get some canned stuff or a couple of bottles or something like that; not as a practice of selling, but it was selling." The plaintiff then denied that he "had sold liquor illegally all through prohibition" but admitted that he had made some sales of it during that period, and admitted that he had been convicted for "bootlegging" "probably five or six times."

The defendant did not introduce into evidence the records of the plaintiff's convictions and there was no evidence either of any

convictions or of any sales after October 26, 1936. It also appeared that the plaintiff had made no sales of liquor "in" Shadow Villa, but that he had made sales "from" it in the sense of keeping his stock there and making his sales out-of-doors in the yard.

The plaintiff's testimony appears very evidently to have been given with reluctance and it shows quibbling over words and terms, notably with relation to what was meant by the term "old-time bootlegger," and sales "in" and "from" Shadow Villa, but, considering it in the light of the factual situation disclosed, we cannot say that the testimony was so deliberately false or misleading as to invoke the rule of *Moreau* v. *Insurance Co.*, 84 N. H. 422. While his testimony was not given with frankness, it is not demonstrated to have been intentionally false (*Wood* v. *Insurance Co.*, 89 N. H. 524, 525), or to have been given with an intention to defraud (*Hall* v. *Insurance Co., ante* 191), and in consequence there is no merit in the contention that the plaintiff was guilty of an attempt to defraud the defendant after the loss.

The defendant's contention with respect to the increase of the risk is based upon the above evidence of the plaintiff's activities in relation to his illegal sales of intoxicants. It takes the position that his use of the premises where the fire started as a base for illegal sales of liquor tended to attract "an undesirable class of persons whose morals counted for little," and that the increased risk engendered by the former presence of such people continued down to the time of the fire (see P. L., c. 276, s. 6), because "The unlawful use made of the property had served as a magnet through the years to draw illicit trade when the owner was present, and it stands to reason that its established notoriety continued to offer a temptation to evilly disposed persons when the place was closed." The defendant cites no cases in support of this proposition.

If the defendant's contention is understood to be that those who purchase liquor illegally sold are as a class morally degenerate in that they are confirmed burglars or incendiaries, it is sufficiently answered by saying that there is no evidence to support it. However, we take the substance of the argument to be that burglars in the prosecution of their calling are likely to be careless with fire, that premises where intoxicating liquors are known to have been kept are more likely to be burglarized than other premises, and in consequence one who lets it be known that he has kept liquor in his house thereby increases the risk of fire-loss as a matter of law. The argument does not commend itself to us. Whatever may have been

the situation during prohibition, we fail to see how any valid distinction as to powers of attraction for burglars may now be drawn between intoxicants and other commodities of comparable popularity and small compass like food, clothing, money or jewels, and we find no valid basis for drawing a line of distinction as to either morals or carefulness between burglars in search of stimulants and those in search of anything else. The question of increase of risk here presented is at the most one of fact for the jury.

*Judgment on the verdict.*

BRANCH, J., did not sit: the others concurred.