Charles D. JOYCE, Trading as Joyce
Motors, Appellant,

v.

L. P. STEUART, Inc., Appellee.

No. 12440.

United States Court of Appeals
District of Columbia Circuit.

Argued May 12, 1955.

Decided Sept. 29, 1955.

Messrs. Albert F. Adams and Daniel J. Freed, Washington, D. C., for appellant.

Mr. Harry L. Ryan, Jr., Washington, D. C., with whom Messrs. Roger J. Whiteford, Jo V. Morgan, Jr., and Duane G. Derrick, Washington, D. C., were on the brief, for appellee.

Before EDGERTON, BAZELON and WASHINGTON, Circuit Judges.

BAZELON, Circuit Judge.

L. P. Steuart, Inc., a "direct dealer" in DeSoto and Plymouth automobiles manufactured by Chrysler Corporation, operates both as a wholesale distributor to associate dealers and as a retailer. In 1940 it entered into a written agreement to sell cars to Charles D. Joyce, as an associate dealer. The agreement provided, *inter alia*, that Steuart

"shall have the right to accept, in whole or in part, any or all orders received, and shall not be liable for any loss or damage resulting from its failure to ship or deliver goods ordered."

and that the

" * * * Terms of Purchase shall remain effective until superseded by the issuance by Direct Dealer of a subsequent Terms of Purchase."

The agreement also provided that its "[t]ermination * * * shall operate as a cancellation of all unfilled orders for motor vehicles, parts and accessories."

This order and acceptance arrangement continued in effect until 1946, when, as a result of the critical post-war shortage of cars, Steuart initiated a quota system for allocating its supply of cars from the manufacturer among its associate dealers and its own retail sales

department. The allocation to Joyce, originally set at three per cent, was increased from time to time until it reached nine per cent. In October 1948, in order to make more cars available for its own retail sales needs, Steuart reduced Joyce's allotment to five per cent without notice to Joyce. Joyce was not aware of the reduction until the spring of 1949, presumably because he did not know the extent of Steuart's supply from the manufacturer. Thereafter, on May 31, 1949, Joyce was given a direct dealer franchise under which he received cars directly from Chrysler at a rate similar to the five per cent quota allotted by Steuart. In connection with this franchise, Joyce and Steuart were required to execute and did execute a document entitled "Termination by Mutual Agreement of DeSoto Associate Dealer Agreement." According to this document, "Any and all agreements, verbal or written" between the parties were terminated. No reservation was made therein of any claim for damages arising out of any breach.

Joyce brought this suit alleging that Steuart had a contractual obligation to continue the nine per cent quota, and that the October 1948 reduction to five per cent was a breach for which Steuart was liable in damages. After trial without jury, the District Court filed an opinion [1] setting forth its ultimate determination that (1) the evidence established no breach of any legal or equitable obligation and (2), even if it had, any claim for such breach was extinguished by the termination agreement. The court also made extensive findings of fact and conclusions of law. This appeal followed dismissal of the suit.

We need not decide whether the evidence established a breach of contract, since we hold that, under the terms of the original 1940 contract, any claims for such breach were extinguished upon the execution of the 1949 termination agreement.

The court found that the parties were bound by the written contract executed in 1940 except that its provisions for "distribution by order and acceptance were superseded by a percentage method of distribution." This finding, amply supported by the record, makes clear that modification of the agreement did not affect the provision in the 1940 contract that "termination * * * shall operate as a cancellation of all unfilled orders * * *." Joyce's case for establishing a contractual obligation under the percentage method of distribution is dependent upon his contention that the allotment was "treated as binding order and acceptance" for nine per cent of the cars which Steuart received from the manufacturer. Under this contention, assuming its validity *arguendo*, the undelivered four per cent would constitute "unfilled orders" which, by express provision in the original 1940 contract, were cancelled by the termination agreement.[2] No comparable express provision was involved in the cases upon which Joyce relies to argue that a termination agreement, unlike a rescission, merely concludes the relationship of the parties in futuro, leaving intact all claims for breaches committed in the past.[3]

In this court Joyce asserts, for the first time, that the termination agreement is not available as a defense because it is matter constituting an avoidance or affirmative defense which Steuart failed to plead affirmatively as required by Rule 8(c) of the Federal Rules of Civil Procedure, 28 U.S.C.[4] Assuming the rule is applicable, Joyce must

1. Joyce v. Steuart, Inc., D.C.D.C.1954, 121 F.Supp. 12.

2. See Durasteel Co. v. Great Lake Steel Corp., 8 Cir., 1953, 205 F.2d 438.

3. E. g., Grant v. Aerodraulics Co., 1949, 91 Cal.App.2d 68, 204 P.2d 683; Tharpe

v. Tracy, La.App.1949, 40 So.2d 509, judgment adhered to La.App.1950, 47 So. 2d 336.

4. See Jack Mann Chevrolet Co. v. Associates Inv. Co., 6 Cir., 1942, 125 F.2d 778, 784.

be deemed to have waived any objections to Steuart's failure to comply.[5] The termination agreement was introduced in evidence at the trial without objection. In addition, its legal effect was argued to the court by both parties orally and in written briefs. Hence Joyce cannot be heard now to complain that he was prejudiced by surprise.[6]

Affirmed.

---

5. 2 Moore, Federal Practice 1695–96 (2d ed. 1948); Tillman v. National City Bank, 2 Cir., 1941, 118 F.2d 631, 635, certiorari denied, 314 U.S. 650, 62 S.Ct. 96, 86 L. Ed. 521.

6. Tillman v. National City Bank, **supra.**