Giuseppe **LOMARTIRA**, Sr., a/k/a Joseph Lomartra, Sr., and Rose Lomartira, a/k/a Rose Lomartra, Plaintiffs,

v.

**AMERICAN AUTOMOBILE INSUR-ANCE COMPANY**, Defendant.

Giuseppe **LOMARTIRA**, Sr., a/k/a Joseph Lomartra, Sr., and Rose Lomartira, a/k/a Rose Lomartra, Plaintiffs,

v.

**QUEEN INSURANCE COMPANY OF AMERICA**, Defendant.

Civ. Nos. 7295, 7296.

United States District Court
D. Connecticut.

July 29, 1965.

Howard F. Zoarski, of Bracken & Zoarski, New Haven, Conn., for plaintiffs.

Wallace W. Brown, and Thomas F. Parker, of Gross, Hyde & Williams, Hartford, Conn., for defendants.

TIMBERS, Chief Judge.

## QUESTION PRESENTED

In these companion actions brought to recover a total of $25,000 under three fire insurance policies covering a two-story dwelling in Branford, Connecticut,

which was completely destroyed by fires in May 1957, the controlling question, believed to be dispositive of all issues in both cases, is whether misrepresentations, fraud and false swearing *at the trial* with respect to material facts by the only plaintiff insured who testified voids the policies pursuant to a concealment and fraud provision, identical in each policy, prescribed by Connecticut statute.

After a ten day trial of the consolidated actions to the Court without a jury, the Court holds that the misrepresentations, fraud and false swearing at the trial with respect to material facts by plaintiff Giuseppe Lomartira, Sr. voided each of the policies. Accordingly, the Court orders that judgment enter in favor of defendant, with costs, in each action.

## JURISDICTION

Jurisdiction is founded on diversity of citizenship.[1] Plaintiffs are Connecticut citizens.[2] Defendant American Automobile Insurance Company being a Missouri corporation, is a citizen of that state. Defendant Queen Insurance Company of America, being a New York corporation, is a citizen of that state. The amount in controversy in each action exceeds $3000, exclusive of interest and costs.

1. 28 U.S.C. § 1332(a) (1), 62 Stat. 930 (1948).
Civil Action No. 7295 originally was brought in the Superior Court for New Haven County, claiming $25,000. Civil Action No. 7296 originally was brought in the Court of Common Pleas for New Haven County, claiming $7500. Defendants in the respective actions removed them to this Court pursuant to 28 U.S.C. § 1441(a), invoking the jurisdiction of this Court pursuant to 28 U.S.C. § 1332 (a) (1) on the ground that requisite diversity of citizenship existed and the requisite jurisdictional amount was involved. Both actions were properly removed, including Civil Action No. 7296 in which $7500 was claimed; for both actions were commenced in the state courts by writs dated May 8, 1958 and both were removed to this Court on May 28, 1958. The 1958 amendments to 28 U.S.C. § 1332, which, *inter alia*, increased the jurisdictional amount to $10,000, apply

## FACTS

*Relief Sought*

In Civil Action No. 7295 plaintiffs seek recovery under two fire insurance policies issued by American Automobile Insurance Company, each in amount of $10,000, as a result of fires which completely destroyed the insured dwelling located in Branford, Connecticut. In Civil Action No. 7296 plaintiffs seek recovery under a fire insurance policy issued by Queen Insurance Company of America in amount of $5,000 covering the same dwelling, as a result of the same fires.

*Disputed Issues*

At the trial defendants conceded that the policies were in effect at the time of the fires on May 26, 1957 and May 30, 1957, and that the insured two-story dwelling was partially damaged by the first fire and was totally destroyed by the latter fire. For trial purposes, they were treated as one fire and one loss.[3]

The chief disputed issues at the trial were the valuation of the insured dwelling and, with respect to the two American Automobile Insurance Company policies, the applicability of an "extension of coverage" provision contained therein.[4]

only to actions commenced after July 25, 1958 (Pub.L. 85–554, § 3, 72 Stat. 415 (1958)).

2. Subsequent to the trial, plaintiff Giuseppe Lomartira, Sr. died. His wife Rose, co-plaintiff in both actions, has been substituted as his administratrix therein.

3. Pre-Trial Order of Hon. M. Joseph Blumenfeld, dated March 30, 1964.

4. Plaintiffs' Exhibits 6 and 8 (the American Automobile Insurance Company policies) each contain extension of coverage provisions which, in pertinent part, read:
SECTION V, subsection D, paragraph (2)—
"If at the time of loss the whole amount of insurance applicable to said building structure for the peril causing the loss is eighty per cent (80%) or more of the full replacement cost of such building structure, the coverage of this policy applicable to such building structure is extended to include the full

*Testimony Of Giuseppe Lomartira, Sr. And His Son*

Giuseppe Lomartira, Sr., the only plaintiff present at the trial, testified on direct examination that he purchased the insured property in two installments for a total price of $9,000, paying $4,500 to the owner of one-half interest in the property about four years prior to the fires, and paying the same amount to the owner of the other half interest about two years prior to the fires. (On cross examination Lomartira modified his testimony as to the times the purchases were made, but not as to the amounts paid.[5])

He then proceeded to recount at length and in detail certain alleged improvements made upon the house, commencing shortly after he purchased the first half interest and completed sometime before the fires in 1957. The improvements he testified were made included installation of running water on the first floor; replacement of window sashes; installation of combination screen and storm windows on all windows in the house; remodelling of a second floor bathroom, including new plumbing fixtures; installation of new electrical wiring and fixtures; replacement of the floors in all the rooms on the second story of the house and in two rooms on the first story with hard oak wood floors; and installation of new gutters.

Lomartira testified that the work on all of these improvements was done by the Russo Roofing Company; that Lomartira had paid Russo over $8,000 for such work; that the payments were in cash and that he had no receipts or other records of his payments; and, in response to a question as to the whereabouts of the Russo Roofing Company, that Russo had died a year or two before the trial.

On cross examination Lomartira reiterated much of his direct testimony with regard to the improvements, adding that the entire work by Russo extended over approximately a three month period.

At the beginning of the seventh day of the trial, after Joseph Lomartira, Jr., son of the plaintiffs, had testified for some time on direct examination, the parties stipulated that the son "would testify on the subject of improvements * * * the same as his father, the plaintiff, has."[6] At the conclusion of the testimony of Joseph Lomartira, Jr., plaintiffs rested.

*Testimony Of Dominick Russo*

Defendants thereupon called as their first witness one Dominick Russo. He testified that from 1928 to 1957 he was the sole proprietor of a business known as the Russo Roofing Company, located in New Haven, Connecticut; in 1957 the business was incorporated, retaining the same name. Russo categorically denied that he had ever done *any* work on the insured property. He testified that he knew Giuseppe Lomartira, Sr.; that he had done some work for him in 1955— roofing, shingling, exterior painting, and the installation of a front door—all on a one-story dwelling owned by Lomartira (the latter's residence), and *not* on the two-story insured dwelling destroyed

---

cost of repair or replacement (without deduction for depreciation).

\* \* \* \* \*

"This Company shall not be liable under paragraph (2) * * * of this Extension of Coverage for any loss unless and until actual repair or replacement is completed."
Plaintiffs claimed the full replacement cost was $30,000. The whole amount of insurance applicable to the building (the $25,000 aggregate of the three policies) therefore exceeded 80% of plaintiffs' claimed replacement cost.
Plaintiffs admitted, however, that no actual repair or replacement had been undertaken, much less completed.
See Pre-Trial Order, supra note 3.

5. Actually, plaintiff Rose Lomartira purchased the first one-half interest in the property, including a 1.07 acre lot, on March 17, 1955 for $4500. Both plaintiffs, Rose and Giuseppe, later purchased the remaining one-half interest on March 27, 1956 for $4500. As of the date of the loss, Rose owned an undivided ¾ interest in the property, Giuseppe a ¼ interest.

6. Tr. 693.

by the fires in May 1957; and that he had received $800 for the work.

Russo testified that he had never done interior work, plumbing, or electrical work for anyone. In response to specific questions, first by defendants' counsel and then by the Court, he flatly denied doing each item of work Lomartira had testified was done by the Russo Roofing Company. Russo also denied ever receiving sums of money aggregating $8,-000 from Lomartira. He testified that the only contract he had ever had with Lomartira was that pursuant to which he was paid $800 by Lomartira for the work on the latter's residence.[7]

Finally, Russo testified that there was no other "Russo" working with him in his business; that no one connected with his business had died within the last two or three years; that he was familiar with all roofers in the Branford-New Haven area during at least the last ten years; that none of them was named "Russo"; and that there was no other "Russo Roofing Company" in that area during that period.

*Court's Notice To Counsel Regarding Discrepancy Between Testimony Of Lomartira And Russo*

At the beginning of the afternoon session of the seventh day of the trial, upon the conclusion of Russo's testimony, the Court addressed counsel in open court as follows:[8]

"THE COURT: I think in all fairness to all persons involved, the Court should make it clear here and now, in the light of testimony by Mr. Russo and of the exhibits which have been marked and produced by him, that the Court regards this as a serious matter, and wholly aside from the issues in this case, I expect a full explanation satisfactory to the

Court of what appears to be a very serious discrepancy between the testimony of the plaintiff and of his son on the one hand, and the testimony of Mr. Russo and the records produced by him.

The Court naturally retains an open mind on this until the record is closed, but I simply want to give fair warning to all concerned that unless an explanation satisfactory to the Court is forthcoming, that I intend to take appropriate steps to determine whether there has been any violation of any law applicable to testimony under oath in this Court."

At no time during the remainder of the trial was any explanation whatsoever offered as to the discrepancy between Lomartira's testimony about $8,000 having been paid to Russo for improvements on the insured property and the flatly contradictory evidence produced by Russo. Although plaintiffs did present a rebuttal case and Lomartira was present in the courtroom during plaintiffs' rebuttal case, he was not called as a rebuttal witness and the discrepancy between his direct testimony regarding improvements and Russo's evidence on the same subject was not even touched upon.

DEFENDANTS' MOTIONS TO AMEND ANSWERS TO PLEAD DEFENSE OF MISREPRESENTATIONS, FRAUD AND FALSE SWEARING BY PLAINTIFFS AT TRIAL

On the last day of the trial, at the conclusion of the evidence, defendants orally moved, pursuant to Rule 15(b), Fed.R.Civ.P., to amend their answers to conform to the evidence by pleading as a defense to each action a concealment and fraud provision contained in each of

---

7. Defendants' Exhibit N is a bank deposit slip in amount of $800, dated June 10, 1955, identified by Russo as recording his deposit of the $800 received from Lomartira for work on the latter's residence. Defendant's Exhibit O is a record of all payments received by the Russo Roofing Company for work done, covering, *inter*

*alia*, the years 1955–1957. Defendants' Exhibit O–1 is a page in Defendants' Exhibit O upon which is recorded the receipt of $800 from Lomartira on June 10, 1955.

8. Tr. 764–765.

the policies; that provision, included in the policies pursuant to Connecticut law,[9] is as follows:[10]

> "Concealment, fraud. This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto."

Defendants claimed, by their motion to amend their answers to conform to the evidence, that plaintiffs, through the testimony at the trial of Giuseppe Lomartira, Sr., were guilty of misrepresentations of material facts with respect to the insured property, and had engaged in fraud and false swearing with relation thereto, thereby voiding each of the three policies in accordance with the concealment and fraud provision set forth above. Defendants further claimed that, while plaintiff Rose Lomartira did not testify, the testimony of Giuseppe Lomartira, Sr. must be considered as having been offered on behalf of both plaintiffs.

The Court reserved decision on defendants' oral motions at the time of trial. Subsequently, with the Court's permission, written motions to the same effect were filed in each action.

Rule 15(a), to the extent here applicable, provides:

> " * * * a party may amend his pleading only by leave of court * * and leave shall be freely given when justice so requires."

Construing this rule, the Supreme Court has said:[11]

> "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.— the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."

Rule 15(b), in relevant part, provides:

> "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues."

Professor Moore[12] observes that the "implied consent", by which issues are tried and thereby treated as if raised in the pleadings,

9. Conn.Gen.Stat. §§ 38–98 and 38–99 (1958).

10. Plaintiffs' Exhibits 6, 7 and 8.

11. Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

12. 3 Moore's Federal Practice ¶ 15.13, at 994 (2d ed. 1964). See Albert v. Joralemon, 271 F.2d 236, 241 (9 Cir. 1959); Hall v. National Supply Company, 270 F. 2d 379, 383 (5 Cir. 1959); Vogrin v. Hedstrom, 220 F.2d 863, 866–867 (8 Cir. 1955), cert. denied, 350 U.S. 845, 76 S.

Ct. 86, 100 L.Ed. 753 (1955). Cf. Oscanyan v. Arms Company, 103 U.S. 261, 26 L.Ed. 539 (1880) (verdict for defendant directed after opening statement of plaintiff's counsel showed that contract on which suit was brought was void, although its invalidity had not been specially pleaded); Bucky v. Sebo, 208 F.2d 304, 305 (2 Cir. 1953) ("brief reference" by counsel to an issue not even suggested in pleadings held sufficient to authorize trial judge to consider that issue under Rule 15(b)).

"usually is found where one party raises an issue material to the other party's case, or where evidence is introduced without objection."

Professor Moore also notes that Rule 15(b), to the extent here applicable, is an exception to Rule 12(h): [13]

"[T]o the extent to which it applies, Rule 15(b) operates as an exception to the rule (Rule 12(h)) that defenses not pleaded are waived. The fact that a defense, even an affirmative defense, has not been formally pleaded is immaterial if the issue was tried by express or implied consent."

Rule 12(h) expressly provides on this point:

"The objection or defense, if made at the trial, shall be disposed of as provided in Rule 15(b) in the light of any evidence that may have been received."

█ █ With regard to pleading fraud as an affirmative defense, Rule 8(c), in pertinent part, provides:

"In pleading to a preceding pleading, a party shall set forth affirmatively * * * fraud * * * and any other matter constituting an avoidance or affirmative defense."

The requirement of Rule 8(c) that fraud must be affirmatively pleaded is not necessarily conclusive, since the definition of an affirmative defense depends upon controlling substantive law, whether state or federal.[14] But assuming, without de-

ciding, that the defense sought to be raised formally by amendment in the instant cases *is* an affirmative defense under Connecticut law, the requirement of Rule 8(c) is not dispositive of the instant motion. Professor Moore in this connection notes:[15]

"Failure to plead matter which constitutes an affirmative defense does not, however, preclude a party from taking advantage of the opposing party's proof, if such proof establishes the defense."

█ Reflecting the underlying spirit of the Federal Rules that cases should be decided upon their merits, rather than upon technical deficiencies in the pleadings, Rule 8(f) provides:

"All pleadings shall be so construed as to do substantial justice."

Under the Federal Rules, "Litigation is not an art in writing nice pleadings." [16] Once an issue is raised and the parties have had an opportunity to present evidence thereon, a determination on the merits of the issue should be made.[17] Indeed, Rule 15(b) is not permissive in its direction that issues tried by implied consent of the parties "*shall* be treated in all respects as if they had been raised in the pleadings." (Emphasis added) With respect to such issues, failure to amend the pleadings in order to set forth the issues explicitly does not affect the trial thereof,[18] it being "the duty of the court to consider issues raised by evidence received without objection even though no formal application is made to amend." [19]

---

13. 3 Moore's, op.cit. supra note 12, ¶ 15.13 [2], at 987.

14. 2 Moore's, op.cit. supra note 12, ¶ 8.27 [3], at 1851.

15. 2 Moore's op. cit. supra note 12, ¶ 8.27 [3], at 1853. See Knudson v. Boren, 261 F.2d 15, 19 (10 Cir. 1958); Farm Bureau Co-op. Mill & Supply v. Blue Star Foods, 238 F.2d 326, 332–333 (8 Cir. 1956); Joyce v. L. P. Steuart, Inc., 227 F.2d 407, 408–409 (D.C.Cir. 1955).

16. 2 Moore's, op.cit. supra note 12, ¶ 8.02, at 1611.

17. See Holley Coal Company v. Globe Indemnity Company, 186 F.2d 291, 295 (4 Cir. 1950); Mitchell v. White Consolidated, Inc., 177 F.2d 500, 502–503 (7 Cir. 1949), cert. denied, 339 U.S. 913, 70 S. Ct. 574, 94 L.Ed. 1339 (1950), and cases cited in notes 12 and 15 supra.

18. Rule 15(b), Fed.R.Civ.P.

19. Underwriters Salvage Company of New York v. Davis & Shaw Furniture Company, 198 F.2d 450, 453 (10 Cir. 1952); accord, Knudson v. Boren, supra note 15, at 19.

In the instant actions the issue of misrepresentations, fraud and false swearing on the part of the insured was pointed up when the Court made note of the serious discrepancy between the testimony of Giuseppe Lomartira, Sr. and that of Dominick Russo with regard to improvements. Actually, the issue was raised by the evidence of plaintiffs, followed by Russo's evidence, as commented upon by the Court. Plaintiffs had fair warning of the existence of such issue.

Indeed, plaintiffs called as part of their rebuttal case two former occupants of the destroyed dwelling (Richitelli and Cunningham) who testified to certain improvements during their occupancies, stressing work done by Lomartira himself. While plaintiffs assert such testimony was directed to the issue of misrepresentations, fraud and false swearing in the testimony of Lomartira, such rebuttal evidence in no way corroborated, nor did it even purport to explain, Lomartira's detailed testimony of improvements made by the Russo Roofing Company, for which Lomartira said he paid more than $8,000. On this issue, plaintiffs chose to offer no rebuttal evidence whatsoever, either by recalling Lomartira or otherwise. Such conduct by plaintiffs cannot preclude the Court from treating the issue of misrepresentations, fraud and false swearing at the trial as having been raised and tried.

Accordingly, the Court must make a determination on that issue. And while it may not have been necessary for defendants to have moved to amend their answers to conform to the evidence pursuant to Rule 15(b), their motions were timely, having been made as soon as it was clear that there would be no attempted explanation of the apparent misrepresentations, fraud and false swearing by Lomartira. Defendants' motions to amend their answers to conform to the evidence are granted.

## MISREPRESENTATIONS, FRAUD AND FALSE SWEARING AT THE TRIAL BY PLAINTIFFS VOIDED EACH OF THE POLICIES

In the Court's view, the resolution of one substantive issue is dispositive of these cases: whether the misrepresentations, fraud and false swearing at the trial with respect to material facts by the only plaintiff insured who testified voids the policies pursuant to the concealment and fraud provision, identical in each policy, prescribed by Connecticut statute.

The concealment and fraud provision contained in each of the three fire insurance policies here involved [20] is a standard provision in such policies in most of the states of this country. As far as the Court has been able to ascertain, the Connecticut state courts have never had occasion to consider whether the misrepresentations, fraud or false swearing "after a loss" which voids a policy containing such provision includes such conduct when perpetrated by the insured at the trial of an action upon the policy. And the jurisdictions which have considered the question have split in their resolution thereof, with some indications of diverse results even within individual jurisdictions.[21]

Apparently those courts which have held the provision inapplicable to testimony given at trial consider it to have been the purpose of the respective legislative prescriptions that such a provision be included in the policies to deal only with pre-trial communications and negotiations between the insured and the insurer, specifically in connection with the filing of sworn "proofs of loss" by the insured.[22]

20. Supra p. 128.

21. See Annot., "Applicability Of Fraud And False Swearing Clause Of Fire Insurance Policy To Testimony Given At Trial", 64 A.L.R.2d 962–966 (1959).

22. See, e. g., Insurance Companies v. Weides, 81 U.S. (14 Wall.) 375, 382–383 (1871); American Paint Service v. Home Insurance Co. of N. Y., 246 F.2d 91, 64 A.L.R.2d 957 (3 Cir. 1957); Royal Insurance Company v. Story, 34 Ala.App. 363, 40 So.2d 719, cert. denied, 252 Ala. 275, 40 So.2d 724 (1949).

It is perfectly obvious, however, that the conduct proscribed by statute—misrepresentations, fraud or false swearing —can as easily, and with at least the same prejudicial effect, be perpetrated at the trial,[23] particularly in a situation such as exists in the instant cases where *no* sworn "proofs of loss" were ever submitted by the insured to the insurers, and where the insured's testimony at trial constitutes his *only* sworn statements with respect to the claimed extent of loss by fire.

This Court cannot assume, absent a clear statutory direction to the contrary, that the Connecticut legislature meant to eliminate only one half of a recognized evil, condoning the remainder. And yet that would be the effect of such a statutory construction in the context of the instant cases. In short, to hold that plaintiffs can escape the "voiding" provision of the policies simply by not incorporating their misrepresentations, fraud and false swearing in a sworn "proof of loss"—none ever having been filed—and that such conduct can be perpetrated for the first time at trial with impunity, would make a mockery of the legislative prescription.

The Court concludes that, under the circumstances of the instant cases, the provision in each of the policies which declares the entire policy shall be void if there are misrepresentations, fraud or false swearing by an insured—"whether before or after a loss"—applies to testimony of the insured at the trial of an action based on such policies.

The factual question of whether plaintiffs did engage in misrepresentations, fraud or false swearing at the trial of these actions, must be answered in the affirmative, as the testimony of Giuseppe Lomartira, Sr., viewed in the light of the evidence produced by Dominick Russo, all too plainly demonstrates.[24] Giving full consideration to the demeanor of the respective witnesses on the stand, any interest they had in the outcome of the cases, the inherent probability and consistency of their testimony, and its corroboration or lack of corroboration with other credible evidence, the Court finds that the insured, Giuseppe Lomartira, Sr., in his testimony at the trial of the instant actions, fraudulently misrepresented and swore falsely regarding the improvements he alleged were made by the Russo Roofing Company to the insured dwelling prior to the fires and regarding the alleged payment of over $8,000 by Lomartira to Russo for such work. Since the valuation of the insured dwelling, as a measure of the loss, was one of the chief disputed issues at the trial, the materiality of Lomartira's fraudulent misrepresentations and false swearing is obvious.[25]

## CONCLUSION

■ The Court concludes that the misrepresentations, fraud and false swearing at the trial with respect to material facts by Giuseppe Lomartira, Sr. voided

23. Courts so viewing the prohibited conduct have held the provision applicable to testimony at the trial of an action on the policy. See Cuetara Hermanos v. Royal Exchange Assurance Company, 23 F.2d 270 (1 Cir.), cert. denied, 277 U.S. 590, 48 S.Ct. 437, 72 L.Ed. 1007 (1927); Atlas Assurance Company of London, England v. Hurst, 11 F.2d 250 (8 Cir. 1926) and cases cited; Knight v. Boston Insurance Company, 113 N.J.L. 132, 172 A. 594 (1934); Moreau v. Palatine Insurance Company of London, England, 84 N.H. 422, 151 A. 817 (1930); Follett v. Standard Fire Insurance Company, 77 N.H. 457, 92 A. 956 (1915).

24. Supra p. 126.

25. The Court holds that it is not necessary that each named insured must engage in the proscribed conduct for the policies to be voided by their terms. While Rose Lomartira, wife of Giuseppe Lomartira, Sr., is also named as an insured under each of the three policies, she neither testified nor appeared at trial. Plaintiffs' case must stand or fall upon the testimony of Giuseppe Lomartira, Sr., with respect to the defense here involved, since his testimony was offered on behalf of both plaintiffs.

132

each of the three fire insurance policies here involved. Accordingly, the Court orders that judgment enter in favor of each of the defendants, with costs, in each action.[26]

26. The conclusion the Court has reached is not intended to reflect, directly or indirectly, upon the professional conduct of plaintiffs' trial counsel. The Court is satisfied that plaintiffs' counsel presented the evidence made available by plaintiffs and that counsel had no reason, at the time Lomartira testified, to suspect that his client was engaging in misrepresentations, fraud and false swearing. In short, the conduct which the Court holds voids the policies is the conduct of plaintiffs, not their counsel.