**Lorraine SANDEN, Appellant,**

**v.**

**MAYO CLINIC et al., Appellees.**

**No. 73–1575.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1974.

Decided April 17, 1974.

Rehearing Denied May 24, 1974.

---

Paul D. Tierney, Minneapolis, Minn., and John J. Doyle, San Francisco, Cal., for appellant.

James H. O'Hagan, Minneapolis, Minn., for appellees.

Before GIBSON, STEPHENSON and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

Lorraine Sanden, a registered nurse residing in San Francisco, California, brought an action against the Mayo Clinic, the Mayo Foundation and two surgeons on the Clinic's staff. In her complaint she alleged that defendants had subjected her to extensive anal surgery, which she had not authorized, including a negligently performed radical hemorrhoidectomy, as a result of which her anal sphincter was irreparably injured, causing her permanent incontinence of the feces, as well as other disabilities. Federal jurisdiction was premised on diversity of citizenship and an amount in controversy exceeding $10,000, 28 U.S.C. § 1332.

Following a seven-day trial, the jury returned a verdict in favor of defendants on May 30, 1973. Ms. Sanden appeals from the order of the District Court denying her timely filed motion for new trial. In this appeal, she asserts as prejudicial error a number of trial rulings by the District Judge, all of which are discussed *infra*.

## I. DEFENDANTS' FAILURE TO PLEAD FRAUD AS A SPECIFIC DEFENSE.

Ms. Sanden's first assignment of error challenges the defendants' introduction of evidence of fraud at the trial. It was the defendants' position that Ms. Sanden, together with her San Francisco attorney,[1] had planned to bring this lawsuit even before she had submitted to surgery at the Mayo Clinic; that she had faked the disabilities purportedly resulting from that surgery; and that she had attempted to introduce at trial

1. Several attorneys have represented Ms. Sanden since the inception of this action. The complaint was initially filed by Thomas F. Burns and Associates, a Minneapolis lawfirm, and John J. Doyle, a San Francisco attorney. Subsequently, Paul D. Tierney of the Minneapolis lawfirm of LeVander, Zimpfer & Tierney, Ltd. replaced Thomas F. Burns and Associates as Ms. Sanden's local counsel; Mr. Doyle continued to serve as co-counsel.

fraudulent evidence to substantiate those disabilities. Ms. Sanden argues that since the defendants did not specifically allege fraud in their answer to her complaint, it was error to permit the introduction of such evidence at trial under Fed.R.Civ.P. 8(c).[2] We disagree. Rule 8(c) requires that fraud and other matters in avoidance of the plaintiff's case be specifically pleaded in the defendants' answer when invoked as affirmative defenses. However, "if the defense involved is one that merely negates an element of the plaintiff's prima facie case * * * it is not truly an affirmative defense and need not be pleaded despite rule 8(c)." 2A J. Moore, Moore's Federal Practice ¶ 8.27 [2], at 1843 (2d ed. 1974). *See* Lomartira v. American Automobile Insurance Co., 245 F.Supp. 124 (D.Conn.1965), aff'd, 371 F.2d 550 (2d Cir. 1967). *Cf.* Goodwin v. Townsend, 197 F.2d 970, 971 (3d Cir. 1952); Feller v. McGrath, 106 F.Supp. 147, 149 (W.D.Pa.1952), aff'd mem. sub nom., Feller v. Brownell, 201 F.2d 670 (3d Cir.), cert. denied, 346 U.S. 831, 74 S.Ct. 24, 98 L.Ed. 355 (1953).

In contending that Ms. Sanden's injuries were feigned and that the lawsuit was no more than a scheme for financial gain, the defendants in no way conceded any color to plaintiff's claim, but were simply attempting to persuade the jury to reject her entire case as untrue.[3] This assignment of error is frivolous.

2. Rule 8(c) provides in part:
   *Affirmative Defenses.* In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. * * *

3. "At common law an affirmative defense should give color to the opposing party's claim, i. e., admit an apparent right in the opposite party and rely on some new matter by which that right is defeated." 2A J. Moore, Moore's Federal Practice ¶ 8.27[3], at 1856 (2d ed. 1974).

## II. REFUSAL OF THE DISTRICT JUDGE TO PERMIT THE PLAINTIFF'S PHYSICIAN TO ATTEND HER MEDICAL EXAMINATION BY DEFENDANTS' EXPERT.

On the third day of trial, the District Court ordered Ms. Sanden to submit to an examination by defendants' medical expert. The examination was to include an electromyographic study of the plaintiff's anal sphincter; such a study distinguishes healthy and intact nerves from damaged nerves through the placement of electrodes in one's muscles and through analysis of the reaction of those muscles to electro-chemical impulses.

Plaintiff requested that a physician of her choice attend this examination as an observer. The defense counsel objected, and Judge Devitt sustained that objection. The examination was performed on behalf of the defendants by William R. Kennedy, M.D., Professor of Neurology, Director of the Neuromuscular Laboratory in the Department of Neurology, University of Minnesota, in Minneapolis. At trial Dr. Kennedy testified that the electromyograph indicated that the muscles and nerves in question were normal and that any abnormal reactions displayed by Ms. Sanden were the result of her purposeful efforts to determine the outcome of the test.[4] The conclusions so drawn by Dr. Kennedy stand in direct contradiction to the findings of three

4. On direct examination by the defense, Dr. Kennedy testified in part as follows:
   Q. Now, do you have an opinion as to whether the patient was trying to contract when you asked her to? A. Well, yes. I concluded that she was not trying, because I had taken a neurological history and performed a neurological examination and looked for any diseases, neurological diseases, as we always do, and I found nothing to indicate that there were other reasons that she couldn't contract when I asked her, that is, no brain damage or spinal cord lesions, et cetera.
   Q. So you concluded, when you asked her to contract, the contraction didn't come because she wasn't trying; is that correct? A. Yes.

other physicians who examined Ms. Sanden and testified on her behalf.[5]

In this appeal, Ms. Sanden urges that Judge Devitt's refusal to allow one of plaintiff's physicians to attend the adverse medical examination performed by Dr. Kennedy constitutes prejudicial error. She contends that this is so particularly because of the importance of the electromyographic study in resolving the disputed questions of fact and because of the conflicting testimony elicited on the test results. We uphold the District Court.

■■ The manner and conditions of a court-ordered medical examination, as well as the designation of the person or persons to conduct such an examination, are vested in the sound discretion of the trial court. Fed.R.Civ.P. 35(a).[6] Although the examined party will usually be permitted to have his or her own physician present, see 4A J. Moore, Moore's Federal Practice ¶ 35.04, at 35–24, 35–25 n. 11 (2d ed. 1974); 64 A. L.R.2d 498–500 (1959), we find that under the circumstances of this case Judge Devitt did not abuse his discretion.[7] No argument was advanced that a physician of her own choosing was needed to protect the privacy of Ms. Sanden, or to shield her from embarrassment. Cf. 64 A.L.R.2d 499–501 (1959). And properly

so. She was a trained, registered nurse. We note that not only did plaintiff's own physician examine her a few hours after the adverse examination but also, in addition to Dr. Kennedy's testimony, the jury had before it extensive medical evidence from a variety of doctors from which to draw its findings of fact.[8] In this context, we perceive no prejudice resulting from Judge Devitt's refusal to permit Ms. Sanden's own physician to attend the adverse examination.

## III. SUBMISSION OF "FALSE EVIDENCE" TO THE JURY.

Plaintiff contends that during the course of the trial her attorney submitted to the defense counsel a tape of an electromyographic study performed on Ms. Sanden by Dr. Willibald Nagler. The tape, as allegedly submitted to the defense counsel, was attached to a demonstration tape showing damaged nerves and muscles of the anal sphincter.[9] The defendants' medical expert, Dr. Edward Lambert, testified that he was given only the demonstration tape, without Ms. Sanden's tape attached; he further claimed that of a series of photographic projections purportedly made from Dr. Nagler's electromyographic study of Ms. Sanden and later introduced as evidence,

---

5. Dr. Willibald Nagler, head of the Department of Physical Medicine and Rehabilitation, New York Hospital and Cornell University, testified that he found the nerves which supply the anal sphincter muscles to be damaged. Dr. Essam Awad, a professor at the University of Minnesota Medical School, specializing in neuromuscular diseases, testified that he had discovered "definite evidence of denervation in the inner sphincter." Dr. Joseph Engel, a physician in private practice in Minneapolis, answered in the affirmative when asked whether there was denervation of Ms. Sanden's anal sphincter.

6. Rule 35(a):
   (a) *Order for examination.* When the mental or physical condition * * * of a party * * * is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician * * *. The order may be made only

on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

7. In so finding, we express no disapproval of those cases in which the examined party has been allowed to have his or her own physician present.

8. A total of eighteen medical doctors testified by appearance or by deposition at the trial.

9. The "demonstration tape" was a tape provided by a Dr. Rogoff of New York who makes such tapes to teach the proper methods of interpreting electromyographic studies. During oral argument before this court, counsel for Ms. Sanden explained that 15 to 20 feet of Ms. Sanden's tape had been attached to a much longer demonstration tape.

he had determined that at least one had been prepared from the demonstration tape.

Plaintiff would have us remand for a new trial on the ground that "false evidence" was submitted to the jury.[10] She argues that the defense counsel lost or destroyed Ms. Sanden's tape and that, in any event, the disclosure of the discrepancy should not have been made before the jury without first apprising the plaintiff's attorney of the problem.

■■ A motion for a new trial is addressed to the sound discretion of the trial court and the action of the trial court should not be upset absent a strong showing of an abuse thereof. Farmers' Co-operative Elevator Association Non-Stock of Big Springs, Nebraska v. Strand, 382 F.2d 224, 230–231 (8th Cir.), cert. denied, 389 U.S. 1014, 88 S. Ct. 589, 19 L.Ed.2d 659 (1967); Bankers Life & Casualty Co. v. Kirtley, 307 F.2d 418, 423 (8th Cir. 1962). We discern no abuse of that discretion. The defendants' expert witness did not testify falsely; he merely testified that a demonstration tape, without Ms. Sanden's tape attached, had been submitted to him[11] and opined that at least one of the photographs introduced as evidence had been made from that demonstration tape. In addition, while counsel for the plaintiff interposed one objection at the outset of Dr. Lambert's testimony—on grounds of irrelevancy and immateriality—, he made no further objection as this line of evidence was developed; in fact, plaintiff's attorney explicitly answered in the negative when asked by the court whether such evidence would be harmful. The court thereupon permitted the defense to continue its questioning of Dr. Lambert.

■ After the entry of the verdict and the judgment thereon, Ms. Sanden submitted to Judge Devitt, together with her motion for a new trial, motions for an independent court-ordered medical examination and for an F.B.I. investigation of the disappearance of the plaintiff's electromyographic tape. Judge Devitt denied each of these post-trial motions. It is not clear whether appellant attempted to preserve these points on appeal; in any event, we decline to disturb Judge Devitt's orders, for we find them well within his discretion.[12]

## IV. THE MISCONDUCT OF THE DEFENSE COUNSEL AND THE TRIAL COURT'S FAILURE TO REPRIMAND HIM.

Appellant assigns as prejudicial error the trial court's failure to disallow certain questions propounded by the defense in open court. The questions included, *inter alia*, suggestions that Ms. Sanden had administered to herself a pudendal nerve block in an effort to control the results of the adverse electromyograph; that she was romantically involved with her San Francisco attorney; that one of her medical witnesses regularly testified for a New York law firm; and that her entire case was fraudulent. Appellant further contends that on certain occasions when the attorneys had approached the bench, counsel for the defense repeatedly spoke loudly, within the hearing of the jury, in disregard of rulings from the bench not to do so.

■ We have studied the transcript and find no error requiring a new trial. The questions propounded by the defense counsel were properly phrased and were not argumentative. Some of the questioning challenged herein occurred during cross-examination by the defense

---

10. *See* Fed.R.Civ.P. 59; Aetna Casualty & Surety Co. v. Yeatts, 122 F.2d 350 (4th Cir. 1941).

11. The tape was then played before the jury so that they might decide whether the voice thereon was that of Dr. Nagler or that of the demonstration instructor, Dr. Rogoff.

12. Following oral argument before this court, Ms. Sanden asked us to order an independent court-appointed electromyographic study of her anal sphincter to resolve the evidentiary discrepancies adduced at trial. An order denying that request was entered March 5, 1974.

of a character witness called on behalf of the plaintiff.

We also note that when the colloquy at the bench became too loud, the court admonished the defense to speak more softly; moreover, the trial court was in a better position than are we to determine the effect, if any, of these remarks on the jury. There was no motion for a mistrial at the time of the bench colloquy nor was this matter specifically mentioned when plaintiff moved for a new trial after the verdict had been rendered. As a result, this issue was not properly preserved for our review. Skogen v. Dow Chemical Co., 375 F.2d 692 (8th Cir. 1967).

Finally, appellant contends that her case was prejudicially described as false and fraudulent during opening statement and closing argument. Normally, it is improper for an attorney to argue before the jury that the case of his opponent is false or fraudulent. See F. W. Woolworth Co. v. Wilson, 74 F.2d 439 (5th Cir. 1934); State v. Williams, 210 N.W.2d 21 (Minn.1973). Yet here the supporting facts were developed at trial and the conclusion, if such evidence was believed, was at least a permissible one. Further, there were no objections made during or immediately after either the opening or the closing argument. See St. Louis Southwestern Railway Co. v. Ferguson, 182 F.2d 949, 954 (8th Cir. 1950); Thomson v. Boles, 123 F.2d 487, 495–496 (8th Cir. 1941), cert. denied, 315 U.S. 804, 62 S.Ct. 632, 86 L.Ed. 1204 (1942); London Guarantee & Accident Co. v. Woelfle, 83 F.2d 325, 344 (8th Cir. 1936); Brinegar v. San Ore Construction Co., 302 F.Supp. 630, 641 (E.D.Ark.1969). We have reviewed the statements complained of and find no plain error.

## V. PREJUDGMENT OF THE CASE ON THE MERITS.

Appellant contends that the trial court prejudged the case in favor of defendants-appellees as demonstrated by several prejudicially erroneous rulings. These include: refusal to allow a continuance, which Ms. Sanden requested when her original Minneapolis attorney withdrew from the case and was replaced by another; pre-trial comments to the effect that plaintiff had "no case"; and refusal to grant a new trial.

Motions for continuance lie within the broad discretion of the trial judge. Anzaldo v. Croes, 478 F.2d 446 (8th Cir. 1973). The record discloses no abuse of discretion. Judge Devitt granted one continuance and rescheduled the trial for precisely the date requested by the plaintiff's second Minneapolis counsel, Paul D. Tierney.

During a pre-trial proceeding on May 7, 1973, Judge Devitt remarked:

I didn't think there was any merit in the case because that's what plaintiff's attorney told me * * *.

This was in response to a statement of defense counsel and indicated a *prior* view of the case. Judge Devitt further explained that although the Minneapolis attorney who had withdrawn from the case favored dismissal of the case, he would grant no dismissal without the approval of Ms. Sanden and her San Francisco attorney. In fact, the record shows that although the defense twice moved that the complaint be dismissed, Judge Devitt did not dismiss the case but instead afforded Ms. Sanden a full and fair trial. Appellant's charges of prejudgment are without merit.[13]

13. It is apparent from a reading of the record that the District Judge was confronted with numerous problems in the management of this case which must have taxed his patience, not to mention his credulity. Despite an atmosphere permeated by charges and counter-charges of professional misconduct, Chief Judge Devitt conducted the trial with fairness and with full consideration of the rights and needs of the parties.

## VI. THE TRIAL COURT'S QUASHING OF DEPOSITIONS AND ITS SCHEDULING OF THE DEPOSITION OF THE PRINCIPAL DOCTOR-DEFENDANT CLOSE TO THE TIME OF TRIAL.

■ Appellant claims as her final assignment of prejudicial error the quashing of notices to take two depositions and the scheduling of another in close proximity to trial. The record reveals that by an order dated May 8, 1973, following a hearing, Judge Devitt partially modified his original order terminating discovery, thereby enabling the plaintiff to take the deposition of Dr. Hill, the principal doctor-defendant as well as the depositions of certain witnesses in California and Florida. We find no error in Judge Devitt's refusal to modify further the original date for completion of discovery, which resulted in the quashing of the deposition of Dr. Quan, one of plaintiff's experts who was unable to appear as a witness at trial, and the effective quashing of the deposition of Dr. Manson, one of the doctor-defendants, who did testify at trial.[14]

■ Nor do we find any abuse of the trial court's discretion[15] in the scheduling of the deposition of Dr. Hill, the principal doctor-defendant, two days before the commencement of the trial. Rule 26(c) expressly permits the trial judge to protect a party from any undue burdens of discovery by, *inter alia*, ordering that "the discovery may be had only on specified terms and conditions, including a designation of *time* or place * * *" (emphasis added). Moreover, the record indicates that during the pre-trial hearing before Judge Devitt on May 7, 1973, Mr. Tierney, counsel for the plaintiff, described as "satisfactory" an arrangement to depose the defendant on "the day before trial".

Affirmed.

---

14. At the hearing, defendants had objected to taking the depositions and had sought protection by means of a motion to quash, which the court apparently treated as a Rule 26(c) motion for protective order. We need not consider the procedural requirements of Fed.R.Civ.P. 26(c), since the challenge was only to the prejudicial effect of the order.

15. *See* General Dynamics Corp. v. Selb Manufacturing Co., 481 F.2d 1204, 1212 (8th. Cir. 1973), cert. denied, 414 U.S. 1162, 94 S. Ct. 926, 39 L.Ed.2d 116 (1974) :

Since the granting or denial of a protective order is within the discretion of the trial court, 4 Moore's Federal Practice ¶ 29.68 at 26–491, only an abuse of that discretion would be cause for reversal.