IVER STANGER v. GARY GORDON AND OTHERS.

244 N. W. 2d 628.

June 25, 1976—No. 45264.

*Fredrikson, Byron, Colborn, Bisbee & Hanson, Jerome S. Rice,* and *Michael A. Stern,* for appellants.

*McCallum, Campbell, Hunt & Crawford, W. B. McCallum,* and *William C. Hunt,* for respondent.

Heard before Sheran, C. J., and Rogosheske, Peterson, Kelly, and Yetka, JJ., and considered and decided by the court en banc.

ROGOSHESKE, JUSTICE.

Defendants appeal from the denial of their blended motion for judgment n.o.v., new trial, or remittitur, and from the order for

judgment entered pursuant to the jury's verdict. The jury, by special verdict, found against defendants on the issue of fraud and awarded plaintiff employee $21,500 in compensatory damages and $12,900 in punitive damages. Defendants contend that the evidence does not support the findings of fraud or the award of damages; that irrelevant and prejudicial testimony by other employees of defendant Allied, Inc., was erroneously admitted; that plaintiff's counsel made improper remarks in closing argument about defendant bank's assertion of attorney-client privilege and other matters; and that the trial judge failed to instruct properly on the affirmative defenses raised by defendants or to include special interrogatories to the jury on such defenses. After consideration of the issues properly before us,[1] we affirm, but order a reduction in the amount awarded as punitive damages.

Plaintiff, Iver Stanger, submitted evidence at trial that defendant Gary Gordon, president of defendant Allied, Inc., fraudulently misrepresented and concealed the terms of a company employee pension and profit-sharing plan. Stanger also alleged that Gordon breached an oral agreement to give him, as a salesman-employee, an absolute right to the pension and profit-sharing contribution made on his behalf in exchange for his acceptance of a commission reduction. The jury, by deciding the

---

[1] Plaintiff acknowledges that defendants have appealed in a timely and proper fashion from the orders denying defendants' motion for judgment n.o.v., a new trial, or a remittitur, but argues that defendants' appeal from the order for judgment, and not the judgment itself, was premature and must be dismissed. We agree. Welch v. Welch, 267 Minn. 558, 127 N. W. 2d 438 (1964). As a consequence, review of this case is limited to those grounds assigned as error in the notice of motion for a new trial, Schaust v. Town Bd. of Hollywood Township, 295 Minn. 571, 204 N. W. 2d 646 (1973), or for judgment n.o.v., Strowbridge v. Winkler, 245 Minn. 97, 71 N. W. 2d 177 (1955). In post-trial motions, defendants did not assign as error the sufficiency of the evidence on damages and the omission of special interrogatories on affirmative defenses. Because the trial court did not consider these issues, they are not properly subject to appellate review.

case on the fraud count, did not reach the breach-of-contract issues.

In examining the jury's verdict finding intentional fraud, we view the evidence of this 2 1/2-week trial in the light most favorable to the prevailing party.[2] We find evidence in the record to support the following abbreviated summary of the troubled business relationship between plaintiff Stanger and defendant Gordon. From 1959 to 1965, Stanger was employed as a salesman of business forms for Pauley Business Forms. By September 1965, Stanger, who was then 50 years old, had determined to leave Pauley and begin his own business forms company or to find new employment. On September 13, 1965, defendant Allied, Inc., adopted a pension and profit-sharing plan. The president and sole shareholder of Allied, Inc., is defendant Gary Gordon. Shortly after the adoption of the plan, a dinner meeting was held between Gordon, Stanger, Charlie Johnson (another Pauley salesman), and Ken Johnson (Charlie Johnson's brother) for the purpose of discussing the terms of Stanger's and Charlie Johnson's possible employment with Gordon. The jury could have found that at that meeting Gordon promised to pay Stanger 75 percent of the gross profit from sales made by Stanger and further that a profit-sharing and pension plan of Gordon's company, Allied, Inc., constituted a form of deferred compensation in which Stanger would have an absolute right of participation upon termination of his employment. Stanger explicitly denied that Gordon made any reference to forfeiture provisions incorporated in the plan at this meeting and testified instead that Gordon represented to him that the funds in the plan allocable to Stanger would be "like a savings account or money in the bank," were "not taxable," and would be there for him when he left Gordon's employ. Prompted by representations made to him about the plan and his commissions, Stanger went to work for Gordon and his company on November 15, 1966.

[2] Carpenter v. Mattison, 300 Minn. 273, 219 N. W. 2d 625 (1974).

Stanger testified, and the jury crediting his testimony could have found, that in succeeding months Stanger agreed to reductions in his commission rates from 75 percent to 70 percent and then to 65 percent, based on Gordon's representation that such reductions were necessary so that Gordon could continue to contribute 15 percent of the profits from Stanger's gross sales toward Stanger's share of the plan. By January 1971, the business relationship between Stanger and Gordon had deteriorated substantially, and on March 15, 1971, Gordon wrote Stanger requesting that Stanger sign a written contract of employment to replace their oral agreements. Stanger objected to several provisions in the proposed written contract and, when agreement appeared impossible, resigned from Allied, Inc., on March 23, 1971. Immediately thereafter Gordon attempted to rehire Stanger, but Stanger declined. Subsequently, Gordon notified Northwestern National Bank of Minneapolis, the trustee of the pension and profit-sharing plan of Allied, Inc., that Stanger had forfeited his interest in the fund because at the time of his resignation he was guilty of insubordination and neglect of duty and had commenced to compete with Allied, all in violation of the terms of the plan. Stanger testified that he was unaware of the noncompetition, insubordination, and neglect-of-duty provisions of the plan until after he resigned from Allied. Other employees had been terminated from employment by Gordon and the profit-sharing fund account of each was forfeited. The evidence is undisputed that by the end of 1972 the entire balance in the profit-sharing fund was $125,891, of which $118,204 was allocated to Gordon's profit-sharing account.

■ While defendants acknowledge the trial court properly instructed the jury on the essential elements of fraud, defendants argue that the evidence failed as a matter of law to establish four of the required elements of fraud. See, Weise v. Red Owl Stores, Inc. 286 Minn. 199, 175 N. W. 2d 184 (1970). We disagree. The evidence is clearly sufficient to require submission and to support the jury's implicit finding that defendant Gordon willfully

and maliciously misrepresented a material fact upon which plaintiff justifiably relied to his damage. Specifically, there was ample evidence from which the jury could find that plaintiff acted reasonably in relying upon Gordon's misrepresentations, despite evidence of Stanger's failure to examine the written plan and learn of the existence of the forfeiture provisions, which he had opportunity to do. See, Davis v. Re-Trac Mfg. Corp. 276 Minn. 116, 118, 149 N. W. 2d 37, 39 (1967).[3]

■ Urging a new trial, Gordon objects to the admission of testimony by other employees of Allied, Inc., concerning their disputes with him over duties and hours, withholding of pay, expense account vouchers, employee resignations, employment placements fees, and unemployment compensation. It is axiomatic that fraudulent intent as to a specific act should not be proven by general evidence of bad character. McCormick, Evidence (2 ed.) § 188, p. 445. In Hollerman v. F. H. Peavey Co. 269 Minn. 221, 230, 130 N. W. 2d 534, 541 (1964), we stated, however, that "where fraud and deception are in issue, the evidence must necessarily take a wide range, and collateral facts are admissible if they have a logical tendency to throw light on the issue." While the collateral evidence admitted here may have approached the outer limits of relevance, we are persuaded that it was neither inadmissible nor, on balance, prejudicial. This evidence disclosed a pattern of deceptive dealings by Gordon with other employees of Allied, Inc., concerning employee benefits and working conditions during the same years in which it was charged that Gordon intentionally deceived Stanger as to the terms and conditions of his employment. Proof of Gordon's

---

[3] Where an employer establishes a deferred compensation and pension plan which is approved by taxing authorities, it is arguable that the employer thereupon becomes a fiduciary charged with an affirmative duty to inform his employees as to the terms and conditions upon which the employees' right to share in the plan's benefits may be forfeited. See, Stark v. Equitable Life Assur. Soc. 205 Minn. 138, 285 N. W. 466 (1939).

similar deceptive dealings with other employees during this period was directly and rationally related to the crucial question of intent to defraud put in issue by Stanger's claims. The trial judge, therefore, did not abuse his discretion in admitting this collateral evidence.

■ As part of his case in chief, Stanger called an employee of Northwestern National Bank and questioned him about the administration of the pension and profit-sharing plan under the direction of defendant Gordon. In chambers prior to this testimony, the trial judge ruled that certain written communications between the bank and its attorneys relating to the Stanger case were protected by the attorney-client privilege. Nevertheless, when the witness testified, Stanger's counsel repeatedly asked redundant questions designed to force the witness to assert the privilege again and again. At several points during the questioning, Stanger's counsel referred to the privileged files as the documents "you won't let us see." In closing argument, after commenting on the "case of the missing evidence" and alluding to the then-current Watergate scandal, counsel again brought up the bank's claim of privilege and suggested the possibility of a coverup. Defendants' request for a curative instruction was denied. They now argue that Stanger's adverse remarks on the proper assertion of attorney-client privilege constitutes reversible error.

We strongly disapprove of the conduct of Stanger's counsel in this case and believe that such conduct should not have been permitted after assertion of the privilege. Permitting adverse comment on the proper assertion of privilege in the presence of the jury is improper and potentially prejudicial because it tends to undermine the public policy embodied in the statutory privilege. See, McCormick, Evidence (2 ed.) § 76, p. 156; 8 Wigmore, Evidence (McNaughton Rev. 1961) § 2322. In Sanne v. Metropolitan Life Ins. Co. 218 Minn. 181, 188, 15 N. W. 2d 524, 528 (1944), we approved the trial court's cautionary instruction to the jury that plaintiff's claim of physician-patient privilege

"should have no bearing as far as the decision of this lawsuit is concerned," given after the defendant in closing argument referred to the plaintiff's assertion of the privilege as a "suppression of the facts." In Nelson v. Ackermann, 249 Minn. 582, 597, 83 N. W. 2d 500, 510 (1957), we noted that when privileges are asserted for the purpose for which they were created they "should be given full respect." In view of the above, it was error to permit plaintiff's counsel to require the attorney-client privilege to be repeatedly invoked through redundant questioning and then in closing argument to comment upon the exercise of that privilege adversely and in an inflammatory manner. However, we are persuaded that in the special circumstances of this case this error did not affect the jury's determination of fraud, even though we are persuaded that there is evidence that it could have influenced the jury's award of punitive damages. In particular, we note that, while plaintiff's counsel requested $7,500 in punitive damages in closing argument, the jury awarded $12,900 in punitive damages. Because of this error, we feel compelled to ameliorate its effect, so far as we can appraise it, by ordering a reduction in the amount of the jury's award of punitive damages. Mindful as we are of intruding on a function addressed almost entirely to the trial judge's discretion, we are collectively agreed that the punitive damages should be reduced to $7,500. We do not, as is generally the case, condition this reduction upon plaintiff's consent because we regard a retrial limited to the issue of punitive damages as impractical and a new trial on all issues as realistically unacceptable to plaintiff.

We have carefully considered other alleged errors raised by defendants and find them to be without merit.

Affirmed in part, reversed in part, and remanded without costs or disbursements to either party.