**E. H. BOERTH COMPANY, a Minnesota Corporation, Plaintiff,**

v.

**LAD PROPERTIES, a Minnesota Corporation, the Landings, a Limited Partnership, and L. A. Donnay, General Partner of the Landings and Individually, Defendants.**

**No. Civ. 4–74–164.**

United States District Court,
D. Minnesota,
Fourth Division.

May 16, 1979.

---

Roger J. Magnuson and Edward J. Pluimer, Dorsey, Windhorst, Hannaford, Whitney & Halladay, Minneapolis, Minn., for plaintiff.

Terence M. Fruth and Marsha A. Freeman, Fredrikson, Byron, Colborn, Bisbee & Hansen, Minneapolis, Minn., for defendants.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter comes before the Court on defendant L. A. "Vern" Donnay's motions for a judgment notwithstanding the verdict, for a new trial, to vacate the order for judgment and judgment entered thereon or, in the alternative, for a remittitur of the damages. Plaintiff E. H. Boerth Company, a securities underwriter, brought this action against defendants in 1974, alleging that defendants' course of conduct amounted to breach of contract, common law fraud, and a violation of SEC Rule 10b–5 and the parallel Minnesota provision, Minn.St. § 80A.01. After a two-week trial, the jury found defendant L. A. Donnay liable under each of plaintiff's four theories, and awarded $35,000 as damages under the breach of contract theory, $5,000 as damages for loss of professional reputation, $5,000 for the securities act violations and $5,000 under the common law fraud theory. In addition, pursuant to the finding of liability under the common law fraud count, the jury awarded $80,000 in punitive damages. On February 2, 1979, this Court entered an order for judgment in the total amount of $139,024.38. In this order for judgment, the Court found that plaintiff was entitled to recover damages in the amount of $35,000 for breach of contract, $5,000 for loss of professional reputation, $80,000 in punitive damages, and $19,024.38 for attorneys' fees and costs awarded by the Court pursuant to Section 80A.01 of the Minnesota Statutes. In order to avoid a multiple or duplicative recovery, plaintiff was not allowed to recover the $5,000 sums awarded under an out-of-pocket measure of damages pursuant to the securities act and common law fraud findings of liability. Thus, the order for judgment awarded a total amount of $139,024.38.

This lawsuit arises out of the parties' involvement in the underwriting of limited partnership units in a real estate project known as the Landings, which was to be located in Brooklyn Park, Minnesota. Defendant The Landings, a Minnesota limited partnership, was established to complete

construction of the Landings project and to obtain income from the townhouse units, six of which were previously constructed in 1968 on a 1.4-acre parcel known as the "Villas," and 144 units which were to be constructed on an adjacent 20-acre parcel. Defendant LAD Properties, a Minnesota corporation, was hired by The Landings to manage the construction of the Landings project. Defendant L. A. "Vern" Donnay, a real estate developer, was at all relevant times the owner of all the common stock of LAD Properties, as well as the general partner of The Landings.

In an agreement dated August 6, 1973, between The Landings by its general partner L. A. Donnay, and plaintiff E. H. Boerth Company, plaintiff agreed to use its best efforts to procure purchasers for 69 limited partnership units for the Landings project. Edwin Boerth, the operator and owner of the E. H. Boerth Co., signed the agreement on behalf of the plaintiff. This agency agreement provided that unless commitments for the 69 units were obtained by plaintiff by December 31 of 1973, the offering would be terminated, and plaintiff would not receive any compensation for its underwriting efforts. However, in the event that plaintiff received commitments for the 69 limited partnership interests by the end of 1973, plaintiff would be entitled to 10 percent of the proceeds of the offering. As the 69 limited partnership interests were to be sold for $10,000 each, in the event they were all sold by December 31, 1973, plaintiff would have been entitled to $69,000 as compensation. In paragraph 4.a.

of the agency agreement, The Landings, by its general partner L. A. Donnay, promised:

In further consideration of the agreement of the Underwriter herein contained, the Partnership by its General Partner agrees as follows:

a. The Partnership will use its best efforts to cause the Registration Statement to receive clearance and will advise you promptly and, if requested by you, will confirm such advice in writing . . . (iv) of the happening of any event which in the judgment of the Partnership or the General Partner makes any material statement in the Registration Statement or the Prospectus untrue or which requires the making of any changes in the Registration Statement or the Prospectus in order to make the statements therein not misleading.

This agency agreement was subsequently amended in order to clarify that plaintiff could appoint selected broker-dealers to assist in effecting sales of the limited partnership units.

This litigation has had a long history of discovery and procedural disputes [1] which need not at this time be fully explored. The facts adduced at trial should be briefly outlined, however, in order to provide a basis for an evaluation of defendant Donnay's motions. The gist of plaintiff's action here was premised on material omissions which defendants failed to provide and certain misrepresentations made in connection with the development of The Landings, all of which contributed to Edwin Boerth's continued participation in the doomed

---

1. Apart from discovery disputes, defendants have continually raised the issue throughout this litigation of whether this action should take place in federal court. On three different occasions prior to trial, defendants brought motions to dismiss on subject matter jurisdiction grounds, arguing that there was no independent basis of federal jurisdiction because plaintiff was not an actual seller or purchaser of securities within the meaning of *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975) and *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir.), *cert. denied*, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). On the first two occasions, the Hon. Miles Lord denied defendants' mo-

tions. On the final motion, this Court found itself in basic agreement with Judge Lord and denied defendants' motion, as the concerns voiced in *Blue Chip Stamps* relating to oral testimony and remote evidence are not present here, and because plaintiff amounts to a statutory seller within the definitional provisions of the Securities Acts. 15 U.S.C. §§ 77b(11); 78c (14). As Section 10 of the 1934 Act upon which Rule 10b–5 is based allows the SEC to prescribe rules to protect both investors or to safeguard the public interest, the purchaser-seller rule in *Blue Chip Stamps* does not include an implicit requirement that plaintiff must be an investor as well. *A. T. Brod v. Perlow*, 375 F.2d 393 (2d Cir. 1967).

project. These misrepresentations and omissions, to a substantial extent, concerned the financial affairs of the Landings project and the Donnay enterprises. One area of dispute concerned the refinancing of the mortgage on the 1.4-acre "Villas" parcel which contained six townhouse units. As the financing on the 1.4-acre parcel expired in October of 1973, it was necessary for the Donnay companies to obtain financing on the parcel from a new lender in order to insure the success of the Landings project. This refinancing was never obtained. Plaintiff claimed, and the jury could have found, that personnel of L. A. Donnay's companies, including L. A. Donnay himself, repeatedly assured Edwin Boerth that such refinancing was being, would be, or had been obtained by the defendants. Insofar as the construction on the 20-acre site was concerned, this construction was funded through a loan to LAD Properties, Inc., made by the First Wisconsin National Bank of Milwaukee. In a letter dated October 3, 1973, this lender advised Dean Peterson of the Donnay enterprises that no further draws could be made on The Landings project as the lender's inspectors estimated an over disbursement of approximately $400,000. The letter also indicated that over disbursements had occurred on numerous other Donnay projects, and that further draws would not be approved. Although L. A. Donnay was aware of this problem, he did not inform Edwin Boerth, or cause any of his employees to inform Mr. Boerth. Moreover, plaintiff's evidence also made it abundantly clear that construction loan funds earmarked for The Landings were diverted to other projects as the financial resources of the Donnay empire crumbled. Mr. Donnay, despite intimate knowledge of the financial losses his companies had sustained, testified that he had no knowledge of such diversions and made no efforts to investigate whether or not funds intended for The Landings were utilized for other Donnay projects. Mr. Boerth was not notified of these diversions by L. A. Donnay or the personnel of his companies. Furthermore, Mr. Donnay admitted that he had knowledge that subcontractors on the Land-

ings projects had walked off the job, possibly as early as July of 1973, although he refrained from acknowledging that during the relevant time period he had knowledge that the reason for their walking off was because they were not being paid. Mr. Boerth, again, was not informed of these occurrences by either Mr. Donnay or his subordinates. Defendant Donnay consistently insisted throughout his testimony that disclosure of any of these matters to plaintiff was none of his affair, but the responsibility of his subordinates. Ultimately, in a meeting on November 27, 1973, which Mr. Boerth's attorney attended, the financial problems of the Donnay enterprises were disclosed, and it became apparent that the Donnay companies were almost $1 million short insofar as the completion of The Landings construction was involved. Shortly after this meeting, in early December, the decision was made to obtain approval from the state securities department to withdraw the offering. After the approval was obtained, all funds paid in were refunded to the subscribers of the limited partnership units in The Landings. As a result of this financial collapse, Mr. Boerth received no compensation for his extensive efforts in selling or attempting to sell the limited partnership units, even though he expended substantial time over the latter part of 1973. Eventually, the Donnay companies made an out-of-court arrangement with their creditors.

Defendant L. A. Donnay now asserts that a new trial or judgment notwithstanding the verdict is appropriate, and raises a panorama of arguments. Defendant Donnay justifies this conclusion by focusing on a claimed inconsistency in the verdict, on alleged prejudicial errors committed at trial and because of various arguments relating to damages. This defendant has also urged the Court to vacate or amend the judgment or alternatively, to grant a remittitur of the damages. After considering all the relevant arguments, the Court has determined that all the motions made by defendant Donnay should be denied.

## MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT

Defendant Donnay advances several arguments relating to damages issues to justify his conclusion that this Court should enter judgment notwithstanding the verdict. Donnay also urges that the verdict was inconsistent because the jury only found Donnay liable, rather than The Landings or LAD Properties, Inc., and also because there is no support in the record for the jury's implicit finding that Edwin Boerth acted with due diligence in his dealings with the Donnay enterprises.

█ It is well established that in evaluating a motion for judgment notwithstanding the verdict, the trial Court is:

(1) to consider the evidence in the light most favorable to the * * * parties prevailing with the jury; (2) to assume that all conflicts in the evidence were resolved * * * in favor of the [prevailing parties]; (3) to assume as proved all facts which [the prevailing parties'] evidence tends to prove; (4) to give the [prevailing parties] the benefit of all favorable inferences which may reasonably be drawn from the facts proved; and (5) to deny the motion if, reviewing the evidence in this light, reasonable men could differ as to the conclusion to be drawn from it.

*Voegeli v. Lewis,* 568 F.2d 89, 92 (8th Cir. 1977); *Griggs v. Firestone Tire & Rubber Co.,* 513 F.2d 851, 857 (8th Cir.), *cert. denied,* 423 U.S. 865, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975); *Hanson v. Ford Motor Co.,* 278 F.2d 586, 596 (8th Cir. 1960). Applying this standard and giving plaintiff the benefit of all favorable inferences, this Court can reach no other conclusion than to deny defendant Donnay's motion, as more than substantial evidence exists on issues of both liability and damages which support the jury's verdict. *Seven Provinces Insurance Company, Ltd. v. Commerce & Industry Insurance Co.,* 65 F.R.D. 674, 682 (W.D.Mo. 1975).

Defendant Donnay argues that plaintiff's damages under its breach of contract theory could not exceed $26,000 if a "lost profits" standard or a "reasonable value of time expended by plaintiff" standard was utilized by the jury, and thus the $35,000 award made pursuant to this theory should be discarded by the Court. Similarly, defendant Donnay argues that the $5,000 awards made by the jury under the common law fraud and securities act violations have no support in the evidence as well, and that L. A. Donnay cannot be held liable for punitive damages as the jury could not legitimately find that he was the "actor" in misleading Mr. Boerth. All of these arguments are without merit.

█ After a lengthy dispute over the proper measure of damages to be utilized for plaintiff's breach of contract theory, the parties agreed that the issue should best be resolved by argument to the jury and the jury was instructed as follows: "If you find that defendants breached their contract with plaintiff, plaintiff is entitled to be placed in as good a position as it would have been placed had the contract not been breached." In its arguments to the jury, plaintiff urged that a "lost profits" measure of damages should be applied, and contended that the jury should adopt the $47,346 net profits projection testified to by plaintiff's accountant, James E. Flaskerud. In this net profit projection, Mr. Flaskerud assumed that all of the 69 limited partnership units were sold by December 31, 1973, and that 23 of the units were sold by other broker-dealers, all of whom were compensated at the customary market rate of 70% of the underwriter's commission per interest sold. Mr. Flaskerud further assumed that winding down costs of $816 incurred by plaintiff would not have been incurred, and that the figure of $6,370, representing alternative sales for December of 1973, should be subtracted from the gross revenue figure as such a figure was the best estimate of revenue plaintiff would have obtained if it had not been preoccupied with selling limited partnership units in The Landings. There was ample evidence, including admissions of Donnay's own accountant, to justify the jury's conclusion that the plaintiff would have sold all the

units by the end of 1973 because of the desirability of the Landings units from an investor's perspective, and because December was the optimum month due to tax reasons for the sale of limited partnership interests. There was thus substantial support in the record for the assumptions made by Mr. Flaskerud, and it was certainly proper for the jury to adjust the components of the formula used in arriving at the net profit projections. The jury could very well have found, for example, that more than 23 units would have been sold by other broker-dealers or that the December alternative sales figure would have been higher, all of which would have reduced the projection of $47,346 to a lesser figure. Thus, it does not follow that the breach of contract damages figure reached by the jury was excessive or speculative, but rather, that their conclusion was based on substantial evidence. Similarly, with respect to the awards reached by this jury on the fraud and securities act violations, there was ample support in the record for the jury to conclude that $5,000 represented a reasonable award.[2]

■ Defendant Donnay also argues that he is entitled to a judgment notwithstanding the verdict because the record does not support the jury's conclusion that L. A. Donnay was the "actor" in misleading Mr. Boerth, and therefore the jury erroneously awarded punitive damages. The evidence however, indicated that defendant Donnay was a principal figure in a course of conduct engaged in by personnel of the Donnay enterprises which deceived Edwin Boerth. Defendant Donnay's surprising cavalier attitude towards the diversion of funds, the subcontractor situation, and the refinancing of the 1.4-acre "Villas" parcel, all inferred recklessness in the sense that defendant Donnay willfully failed to take any action whatsoever with respect to his promises to and dealings with plaintiff. The jury therefore had an ample basis for concluding that defendant Donnay, despite the reliance he placed on his subordinates, acted willfully or wantonly in failing to inform Mr. Boerth of material developments.

■ Finally, defendant Donnay argues that plaintiff should be barred from recovery because Edwin Boerth failed to exercise the requisite due diligence required of a securities underwriter. The Court instructed the jury that with respect to the securities act theories of plaintiff, in order for plaintiff to recover under these theories, it must have proven that it made a due diligence inquiry concerning the securities offering. Clearly, there was ample evidence for the jury to find that Mr. Boerth and his attorneys acted with the requisite diligence, and defendant Donnay's argument therefore has no merit.

■ Accordingly, defendant Donnay's motion for judgment notwithstanding the verdict[3] is hereby denied.

---

2. As defendant Donnay does not contest the fact of liability as to the fraud and securities act violations, and as he could not as a practical matter because of the substantial evidence of fraud, it is difficult to perceive how he is injured by the jury's allegedly erroneous damages calculations on the fraud and securities act violations, because the order for judgment does not award these amounts as damages. In any event, there was substantial evidence for the jury to find defendant Donnay liable for fraud and under the securities act, as well as arriving at $5,000 figures for damages. Moreover, defendant Donnay has little room to argue that the amount of damages awarded was imprecise. *Eastman Kodak Co. v. Southern Photo Materials Co.*, 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927); *Arthur Murray, Inc. v. Reserve Plan, Inc.*, 406 F.2d 1138 (8th Cir. 1969).

3. As noted, defendant Donnay has argued that a judgment notwithstanding the verdict is appropriate because of a claimed inconsistent or perverse verdict. A prerequisite for a party moving for a judgment notwithstanding the verdict is for that party to have made a motion for a directed verdict. Also, the motion for judgment notwithstanding the verdict cannot include grounds not urged in the motion for a directed verdict. *Ralston Purina Co. v. Parsons Feed & Farm Supply, Inc.*, 364 F.2d 57 (8th Cir. 1966); *Jones Truck Lines v. Argo*, 237 F.2d 649 (8th Cir. 1956). Here, defendant Donnay properly moved for a directed verdict at the close of plaintiff's case. However, as defendant Donnay did not and could not have urged inconsistency of the jury verdict as an argument in his motion for a directed verdict, it necessarily follows that a motion for judgment notwithstanding the verdict is an inappropriate vehicle

## MOTION FOR A NEW TRIAL

A motion for a new trial is addressed to the sound discretion of the trial court. *Sanden v. Mayo Clinic,* 495 F.2d 221 (8th Cir. 1974). While the trial court may grant a new trial and set aside the verdict even though substantial evidence exists to support the verdict, in exercising its discretion, the trial court should not grant a motion for a new trial unless the Court is convinced that the verdict is against the clear weight of the evidence or that a miscarriage of justice has occurred. *Fireman's Fund Insurance Co. v. Aalco Wrecking Co., Inc.,* 466 F.2d 179, 187 (8th Cir. 1972), *cert. denied,* 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973); *Seven Provinces Insurance Co., Ltd. v. Commerce & Industry Insurance Co.,* 65 F.R.D. 674, 688 (W.D.Mo. 1975). Defendant Donnay raises a number of arguments here as well, urging that a new trial is warranted because the jury verdict is inconsistent, that the verdict itself is a product of passion and prejudice, that the special verdict interrogatories were too conclusionary, and that the Court committed prejudicial error in admitting the testimony of Dean Peterson, who invoked his Fifth Amendment privilege against self-incrimination with respect to inquiries relating to his involvement with the financial and other affairs of the Donnay enterprises.

Defendant Donnay argues that because the jury only returned a verdict against him and failed to find the other defendants liable, the verdict was necessarily inconsistent because Donnay was at all material times acting within the scope of his authority as to either LAD Properties or The Landings. This apparent inconsistency, defendant Donnay concludes, reflects an element of jury confusion to an extent that a new trial is warranted.

In the event that the jury responds to special verdict interrogatories in an inconsistent manner, the usual remedy is for the trial court to order a new trial. *See,* e. g., *Global Van Lines, Inc. v. Nebeker,* 541 F.2d 865 (10th Cir. 1976); *Wood v. Holiday Inns, Inc.,* 508 F.2d 167 (5th Cir. 1975). However, the rule that a new trial should be ordered when inconsistent answers are propounded by the jury does not emasculate the overriding principle that in order for a trial court to grant a motion for a new trial, a miscarriage of justice must be present. After the jury retired to deliberate, they submitted a number of questions to the Court, one (or two) of which asked:

> 3. Who will be responsible for paying damages for The Landings and LAD properties? Will L. A. Donnay pay all three defendant charges?[4]

The nature of any operative jury confusion, as reflected in the instant question, relates to the relationships between the three defendants and as to how liability would be assessed, rather than confusion over whether liability existed in the first place. The evidence clearly indicated that defendants L. A. Donnay and The Landings breached the agency agreement with plaintiff, and that defendants LAD Properties and The Landings engaged in deceptive practices, as well as (and perhaps because of) defendant Donnay. Merely because the jury was perplexed over the interrelationships between the defendants in what can be easily characterized as relatively complicated litigation would not justify this Court ordering a new trial. *Cf. Global Van Lines, Inc. v. Nebeker,* 541 F.2d 865 (10th Cir. 1976) (new trial not warranted where inconsistencies were not severe). Here, defendant Donnay was the only general partner of The Landings, and the sole shareholder of LAD Properties, Inc. As such, if these defendants were to be found liable, as a practical matter, L. A. Donnay would indirectly be responsible for the payment of any judgment. Moreover, as a general partner of The Landings, L. A. Donnay is personally liable for the partnership's breach of contract. Minn.St. § 323.14. The jury properly concluded on the

---

in which to present this issue. The merits of this issue are discussed, *infra,* as part of defendant Donnay's motion for a new trial.

4. Pursuant to an agreement reached by counsel for the parties, the Court informed the jury in open court that it would not answer this particular question.

evidence that defendant Donnay was a principal force in the deception surrounding the Landings project. Any inconsistency or error which the jury's findings reflected is, under the circumstances, not serious, and harmless as well. Fed.R.Civ.P. 61. Thus, defendant Donnay's argument that the jury verdict is inconsistent or perverse does not entitle him to a new trial.

■ Defendant Donnay also argues that he is entitled to a new trial because the verdict is excessive, a product of passion and prejudice and contrary to the weight of the evidence. This Court has considered each of these arguments and concluded that they lack substance. There was simply substantial evidence in the record of pervasive fraud and broken promises and the jury's verdict as to liability and damages is appropriate.

L. A. Donnay's final argument with respect to a new trial concerns the testimony of Dean Peterson, an employee of both LAD Properties and The Landings. Mr. Peterson was involved in financing matters during the relevant time periods here as assistant vice president of various Donnay companies, including The Landings and LAD Properties. Under subpoena by the plaintiff, Peterson testified to his duties and position with the Donnay enterprises in general fashion, but invoked his Fifth Amendment privilege against self-incrimination with respect to specific inquiries regarding financing arrangements for the Landings project, as well as other matters. Prior to his testimony, the Court was advised that Mr. Peterson would in all likeli-

hood invoke his testimonial privilege. After the initial invocation of the privilege by the witness, the Court read a cautionary instruction [5] to the jury which in effect allowed the jury to draw an adverse inference if it chose to do so against defendants LAD Properties or The Landings because of the invocation of the privilege, but admonished the jury that no inferences could be drawn against defendant Donnay by reason of the claimed privilege. The Court repeated the cautionary instruction in its final instructions. Defendant Donnay argues that allowing this witness to claim the Fifth Amendment privilege in the presence of the jury was prejudicial error entitling him to a new trial, or alternatively, that the cautionary instruction given by the Court was ineffective and failed to cure the alleged prejudicial effect of the claim of privilege.

In *Baxter v. Palmigiano,* 425 U.S. 308, 318–19, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), the Supreme Court made it clear that an adverse inference could be drawn against parties to civil actions when those parties rely on their Fifth Amendment privilege against self-incrimination. As Dean Peterson was not a party to this civil litigation, but rather an agent or employee of two parties to this civil litigation, the Supreme Court's decision in *Baxter v. Palmigiano, supra,* is not decisive. In *Ralph Hegman Company v. Transamerica Insurance Company,* 293 Minn. 323, 198 N.W.2d 555 (1972), the Minnesota Supreme Court confronted an analogous problem. *Hegman* was an action brought by an employer against the surety on a fidelity bond on plaintiff's em-

---

**5.** This instruction provided as follows:

When a witness refuses to answer a question on the basis of his Fifth Amendment privilege against self-incrimination, normally no inferences may be drawn by the jury against any party to the action. However, as here, if the witness who refuses to answer was an employee or agent of a corporation or partnership which is a party to the action and the subject matter of the question to which he refuses to answer falls within the scope of the employment or agency which he had with the corporation or the partnership, then the jury may, but is not required to, draw an adverse inference against that corporation or partnership. Here, in addition, I

instruct you that no inferences may be drawn against the individual defendant Vern Donnay because this witness refuses to answer questions on the basis of his privilege against self-incrimination. Moreover, I instruct you that you may not infer from a witness asserting the Fifth Amendment privilege that violations of the criminal law have taken place on the part of any party or witness in this case. It should be noted that plaintiff's counsel did not dwell on the claim of privilege in his arguments or make inappropriate comments or contentions over the assertion of the privilege. Thus, *Stanger v. Gordon,* 309 Minn. 215, 244 N.W.2d 628 (1976), cited by defendant Donnay, is not relevant.

ployee. In a deposition introduced at trial, the employee had invoked his Fifth Amendment privilege against self-incrimination to questions concerning financial shortages which had developed during the employee's employment. On appeal, the defendant surety argued that the introduction of the deposition was unduly prejudicial as it allowed the jury to draw improper inferences against it from the claims of privilege. Although the entity in *Hegman* possibly prejudiced by the claim of privilege was not the party who asserted the privilege, the Minnesota court rejected the surety's contentions. Relying on the principle that statements of a principal may be admissible as admissions against the surety, the court reasoned that as adverse inferences because of the assertion of the privilege could have been drawn against the employee, the jury could properly draw the same inference against the surety, and thus no error existed.

■ Here, the subject matter of the questions propounded to Dean Peterson were concerned with an extremely relevant area, the financing affairs and the diversion of funds from the Landings project. Rather than answering the questions directly, the agent of the Donnay enterprises primarily responsible for securing and overseeing financing affairs claimed his Fifth Amendment privilege. Under the circumstances, it was entirely reasonable to admit the testimony, and to allow the jury to draw whatever inferences are reasonable from the claim of privilege against the witness' employers, LAD Properties and The Landings. *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976); *Simpson v. Simpson*, 233 Ga. 17, 209 S.E.2d 611 (1974); *Ralph Hegman Company v. Transamerica Insurance Company*, 293 Minn. 323, 198 N.W.2d 555 (1972); *City of*

*Philadelphia v. Kenny*, 28 Pa.Cmwlth. 531, 369 A.2d 1343, *cert. denied*, 434 U.S. 923, 98 S.Ct. 401, 54 L.Ed.2d 281 (1977); *Molloy v. Molloy*, 46 Wis.2d 682, 176 N.W.2d 292 (1970); *Cf.* Fed.R.Evid. 801(d)(2)(D). The cautionary instruction given the jury was given for the benefit of L. A. Donnay, and the Court is of the opinion that the instruction was proper and appropriate under the circumstances. Consequently, there is no error, and defendant Donnay is not entitled to a new trial.[6]

## MOTION TO VACATE THE JUDGMENT AND FOR A REMITTITUR

Defendant Donnay argues that this Court should vacate the judgment because it reflects an incorrect evaluation of the verdict. More specifically, defendant Donnay contends that the damages figures arrived at by the jury were improper, that it is inappropriate for plaintiff to simultaneously recover damages based on breach of contract and punitive damages, and that the award of attorneys' fees was improper because based on an insufficient record. Alternatively, defendant Donnay seeks a remittitur.

■ With respect to the first prong of defendant Donnay's argument, the Court is of the opinion that the sums arrived at by the jury as damages figures were based on substantial probative evidence. Moreover, it is well settled that a defendant whose wrongful conduct caused injury is not entitled to complain over the exactitude of the damage calculations. *See Eastman Kodak Co. v. Southern Photo Materials Co.*, 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927); *Arthur Murray, Inc. v. Reserve Plan, Inc.*, 406 F.2d 1138 (8th Cir. 1969). *See also* the Court's discussion of damages with respect to defendant Donnay's motion for judgment notwithstanding the verdict, *supra*, at 641–

**6.** As noted, defendant Donnay has argued that he is entitled to a new trial because the form of special interrogatories used in the special verdict was too conclusionary. Aside from the fact that the use and form of such interrogatories is discretionary with the Court, defendant Donnay specifically agreed to the use and form of the special verdict questions prior to the submission of the case to the jury. As such, he has no room to complain about their use. In any event, the jury was specifically asked 19 questions, and to make further inquiries into factual areas and elements would have only created further confusion in an already prolonged and complicated case.

642. Defendant Donnay's first argument is therefore rejected.

As for defendant Donnay's argument that punitive damages cannot be awarded with compensatory damages based on a contract theory, it likewise must be rejected. Recovery in tort does not preclude further recovery for breach of contract, provided the plaintiff does not recover damages in excess of the actual injury sustained. *Clements Auto Company v. Service Bureau Corporation,* 298 F.Supp. 115, 139–40 (D.Minn.1969), *rev'd in part on other grounds,* 444 F.2d 169 (8th Cir. 1971). Thus, while the plaintiff is entitled to the maximum amount of damages awarded, damage sums cannot be aggregated if to do so would allow a duplicative recovery. Here, it was proper to award plaintiff the $35,000 award arrived at by the jury applying a benefit of the bargain breach of contract measure. It was also proper to exclude from the order for judgment the $5,000 damage figures reached by the jury applying essentially an out-of-pocket fraud measure of damages, as to include such amounts would have resulted in a double recovery. This conclusion necessarily follows because the out-of-pocket measure under which these $5,000 figures were reached was subsumed within the benefit of the bargain—lost profits standard utilized by the jury under plaintiff's contract theory. Moreover, it was appropriate for the court to add the $5,000 damage figure for loss of professional reputation as special damages for the breach of contract. *Bonhiver v. Graff,* 248 N.W.2d 291, 304 (Minn.1976). *Lowrey v. Dingmann,* 251 Minn. 124, 86 N.W.2d 499 (1957).

With respect to awarding punitive damages, it is clear that submitting the issue pursuant to the Minnesota common law fraud claim was appropriate. *Nye v. Blyth Eastman Dillon & Co.,* 588 F.2d 1189 (8th Cir. 1978); *Young v. Taylor,* 466 F.2d 1329 (10th Cir. 1972); *Wild v. Rarig,* 302 Minn. 419, 234 N.W.2d 775, 789 (1975), *app. dismissed,* 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976). Defendant Donnay argues however, that an award of punitive damages cannot be made in conjunction with an award for breach of contract damages under Minnesota law. This argument is unavailing for two reasons. First, punitive damages are by definition not duplicative as they are not designed to compensate but rather to punish the offender for his reckless or oppressive conduct. *Nye v. Blyth Eastman Dillon & Co., Inc.,* 588 F.2d 1189 (8th Cir. 1978). Second, in accordance with Minnesota law, punitive damages are recoverable in a breach of contract action where the breach "constitutes or is accompanied by an independent tort." *Wild v. Rarig,* 302 Minn. 419, 234 N.W.2d 775, 789 (1975), *app. dismissed,* 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976). Defendant Donnay argues that as the misrepresentations or fraudulent omissions constitute the breach, there is only one injury, and thus there is no "independent" tort. Defendant Donnay misconstrues the rule. There is no requirement that there be an independent or separate injury apart from that caused by the breach, only that there be an independent tort, which may itself be a breach of contract. *Id.* Punitive damages in this context are awarded because of tortious conduct, not because plaintiff sustains a particular injury, and such an award is not precluded merely because a breach of contract is present. *Craft v. Economy Fire & Cas. Co.,* 572 F.2d 565 (7th Cir. 1978); *Bazal v. Belford Trucking Co., Inc.,* 442 F.Supp. 1089 (S.D.Fla.1977); *Vernon Fire & Casualty Insurance Co. v. Sharp,* 264 Ind. 599, 349 N.E.2d 173, 180 (1976); *Meyer v. Nottger,* 241 N.W.2d 911 (Iowa 1976); *Wild v. Rarig,* 302 Minn. 419, 234 N.W.2d 775 (1975), *app. dismissed,* 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976). Thus, as the award of punitive damages was premised on the presence of the independent tort of fraud, and as punitive damages cannot be considered duplicative, there is no inconsistency or error in allowing recovery for breach of contract and punitive damages under the operative circumstances here.

As for defendant Donnay's arguments relating to attorneys' fees, the Court rejects the notion that there was an insuffi-

cient foundation[7] for an award of $17,500 in attorneys' fees. The Court has also considered defendant's argument that a remittitur is warranted, and has determined that the award is not excessive under the circumstances. Accordingly, defendant Donnay's motion to vacate or amend the judgment, or alternatively for a remittitur, is denied.

The Court has considered all of the arguments presented by defendant Donnay and has determined that none of the arguments justify the relief sought. Therefore, IT IS HEREBY ORDERED that defendant L. A. Donnay's motions for judgment notwithstanding the verdict, for a new trial, to vacate or amend the order for judgment and judgment entered thereon, or for a remittitur are hereby denied. Furthermore, IT IS HEREBY ORDERED that the execution of or any proceedings to enforce the judgment as amended by the Order entered as of this date is hereby stayed for a period of ten days from the entry of this order, said stay of execution to expire thereafter.

See also, D.C., 82 F.R.D. 652, and D.C., 82 F.R.D. 655.

---

7. As counsel for plaintiff submitted a sworn affidavit which detailed the nature of their duties, time spent and what appeared to be a fair hourly rate, there is an appropriate foundation to award attorney fees pursuant to Minn.St. § 80A.01. This affidavit also indicated that no contingent fee arrangement with plaintiff existed. In sum, the information presented was sufficient "probative evidence" to assist the Court in arriving at a reasonable award. *Obraske v. Woody,* 294 Minn. 105, 199 N.W.2d 429, 432 (1972); *O'Donnell v. McGee Trucks, Inc.,* 294 Minn. 110, 199 N.W.2d 432 (1972).